## HELIS v. WARD, EXECUTRIX, ET AL.

No. 68. Argued December 6, 1939.—Decided December 18, 1939.

*Mr. Eugene D. Saunders* for petitioner.

*Mr. William N. Bonner*, with whom *Mr. W. D. Gordon* was on the brief, for respondents.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This is a suit for specific performance of a contract to purchase a mineral lease brought by respondents, as vendors. The contract price was to be determined pursuant to a formula based upon the production of certain designated wells on the property. That price was fixed at $300,000 "if the average daily production of said wells for a period of fifteen days after completion is less than

3,000 barrels each, calculated on a ⅜-inch choke according to the methods usually employed in gauging the capacity of oil wells." In case the production, calculated in that manner, was more than 3,000 barrels per day, the purchase price was fixed at $400,000. The test was to be made jointly by a representative of respondents and a representative of petitioner; and "in the event they fail to agree on the proper gauge," it was provided that "Judge Hardin . . . will appoint a reputable engineer to act as umpire."

The parties failed to agree on the proper gauge and Judge Hardin appointed W. L. Massey, a petroleum engineer, to make the test.[1] Massey conducted a test and submitted a written report, which without objection was admitted at the trial. That report stated that although "the well will not make 3,000 barrels per day on such ⅜″ choke," it was "capable of flowing merchantable oil at a rate much in excess of 3,000 barrels of oil per day on an open flow, or through any choke larger than a ⅝″ choke." At the trial there was other testimony that the production "through a ⅜-inch choke" was not more than 3,000 barrels a day. The trial court held that the contract meant that the well was to be flowed through a ⅜-inch choke. Accordingly it dismissed the bill, since on that interpretation it was clear that the production was not more than 3,000 barrels a day and since petitioner already had paid $300,000. On appeal, the Circuit Court of Appeals held that the test provided in the contract "was not to measure the production through a ⅜-inch choke, but to calculate on a ⅜-inch choke the amount the well was capable of producing." It then turned to the record and ascertained that Massey, the umpire appointed pur-

_____

[1] Judge Hardin instructed Massey: "You are requested to determine, first, the actual production of three-eighths (⅜) choke; second, by using the three-eighths (⅜) choke you are to calculate the open flow capacity of the well."

suant to the agreement of the parties, had found that by using the ⅜-inch choke as a base and "building up therefrom by using other chokes to determine pressures and conditions" the well was capable of producing much in excess of 3,000 barrels of oil per day. Since that calculation by Massey was consistent with the Circuit Court of Appeals' interpretation of the formula in the contract, that court concluded that petitioner was liable to pay the higher amount provided in the contract, $400,000. It accordingly reversed the judgment directing the District Court to enter judgment for respondents for $100,-000, the balance due under the contract, with interest. We granted certiorari, limited to the question whether a new trial should not have been granted, on the assertion that the failure to remand for a new trial deprived petitioner of his day in court in violation of the rule of *Saunders* v. *Shaw*, 244 U. S. 317.

We conclude that the Circuit Court of Appeals committed no error.

The fact that the case was tried by the District Court on an interpretation of the contract different from that of the Circuit Court of Appeals is not *per se* sufficient to cause a remand for a new trial under the rule of *Saunders* v. *Shaw, supra.* The production of the well was tested by the umpire in the manner provided in the contract and the results of that test were without objection admitted at the trial. Complete establishment of the facts necessary for application of the formula was thus made in the manner provided by the parties in their contract. To be sure, petitioner now asserts that on a new trial he would attack the competency and accuracy of the umpire's report—matters which were immaterial to the issues on the trial in view of the fact that it was not contested that no more than 3,000 barrels of oil a day could be produced through a ⅜-inch choke. But the difficulty with petitioner's position is that he has not pre-

served that point. On his petition for rehearing to the Circuit Court of Appeals, petitioner did not ask that court to allow him a new trial in order to attack the umpire's report.[2] Nor was that the ground upon which the petition for certiorari was predicated. For review by this Court was sought and granted on the ground that the Circuit Court of Appeals had decided the merits on facts not contained in the record and on a theory which had never been tried by the litigants. There was no intimation in the petition for certiorari that a new trial should be granted in order to afford petitioner an opportunity to attack the competency and accuracy of the umpire's report. It is well settled that this Court confines itself to the ground upon which the writ was asked or granted, the review here being no broader than that sought by the petitioner. *Clark* v. *Williard*, 294 U. S. 211, 216; *Helvering* v. *Tex-Penn Oil Co.*, 300 U. S. 481, 498; *Washington, V. & M. Coach Co.* v. *National Labor Relations Board*, 301 U. S. 142, 146. Accordingly, petitioner cannot now complain that he has not had his day in court and has been deprived of due process of law contrary to the Fifth Amendment. Due process of law is not concerned with mere afterthoughts.

*Affirmed.*

---

[2] In addition to attacking the interpretation of the contract by the Circuit Court of Appeals, petitioner merely asserted, "Your Honors have erred in predicating your opinion upon facts not contained in the record and upon facts which are disproved by the record."