KARN v. UNITED STATES.

No. 11250.

Circuit Court of Appeals, Ninth Circuit.

Dec. 2, 1946.

Warren A. Taylor, of Fairbanks, Alaska, for appellant.

Harry O. Arend, U. S. Atty., and William E. Berrett, Asst. U. S. Atty., both of Fairbanks, Alaska, for appellee.

Before DENMAN, BONE, and ORR, Circuit Judges.

BONE, Circuit Judge.

Appellant was convicted of the crime of larceny in the District Court for the Territory of Alaska, Fourth Division. The indictment, based upon Sec, 4800, Comp. Laws of Alaska, 1933, was in two counts. Count I, a breaking and entering charge, was dismissed by the prosecution at the close of its case, and the case was submitted to the jury on Count II, a larceny charge. Appellant was convicted and sentenced on this count and from that judgment and sentence this appeal was prosecuted in forma pauperis. At the conclusion of all of the evidence (appellant offered no evidence or testimony) appellant moved for a directed verdict.

Some objection to deficiencies of form in the appeal was made, but in view of the character of the substantive rights involved, and appellant's contention that the evidence is wholly insufficient to support the verdict, we consider his motion for directed verdict on its merits.

Appellant has assigned and urged chiefly as errors, the insufficiency of the evidence to support the verdict, the improper admission of evidence and certain instructions to the jury. We lay to one side the consideration of all questions except the alleged insufficiency of the evidence to sustain the verdict of the jury. Other points mentioned are not material to our decision.

In our examination of this record, we have recognized the rule announced in Banks v. United States, 9 Cir., 147 F.2d 628 that if there be some competent and substantial evidence to sustain the verdict, we must affirm. We have carefully ex-

amined this record and we find no evidence of this character.

Viewing the evidence most favorably to the government, we gather from the record the following facts:

█ The prosecution relied entirely upon circumstantial evidence for a conviction. It is sufficient to say that under such circumstances the evidence must not only be consistent with guilt, but inconsistent with every reasonable hypothesis of innocence. The evidence should be required to point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis but that of guilt. 23 C.J.S. Criminal Law, § 907, pp. 151, 152; Paddock v. United States, 9 Cir., 1935, 79 F.2d 872, 876; Ferris v. United States, 9 Cir., 1930, 40 F.2d 837, 840. Our considered judgment is that the evidence in this case falls far short of meeting this exacting standard.

The larceny was committed in the Chena Bar in Fairbanks, Alaska, owned and operated by witness, D. L. Hammond. On the night of September 14, 1945, appellant was seen in the Chena Bar by two witnesses, both employees, one of whom also testified that he thought appellant was wearing a brown jacket. Both were certain that appellant left the barroom early in the evening. When the bar was closed about 1:00 A.M., Hammond and four or five of his employees left, but contrary to the usual custom all of the day's cash receipts, totalling $1217, were left overnight in three cash registers. These men went out to a restaurant to have something to eat, and finally separated about 2:00 A.M. There is no showing as to what any of them did thereafter save each one's statements that he went to bed. Hammond admitted that all of these employees knew of the overnight presence of this money.

On the night of the larceny, one Shirley Redetzke, the check room girl who lived in a room above the Chena Bar was awake and looking out of her window about 3:00 A.M. She testified that she saw a man nearby and thought he had come out of the Chena Bar. He entered a midnight-blue "pick-up" truck and drove away. She stated that she did not recognize the man as John Karn and did not see his face. He was of average build and wearing a "tannish" jacket, a light hat, a white shirt and tie. She had seen the truck belonging to one Ferguson (a witness for the prosecution) but could not identify that truck with the one so driven away during the night.

One Ziegler, an employee who came to clean the Chena Bar room the morning right after the theft, discovered that the door to the establishment had been forced open and he saw money on the floor. He called Hammond and the police were notified. The sum of $188 in paper money and silver was strewn about the floor. The rest of the money from the three cash registers, amounting, according to Hammond, to $1079, was missing.[1]

On the following morning, officers went to the place where appellant was sleeping and placed him under arrest. He had, plainly displayed in his pocket, the sum of $377 all of which was paper money except $2 in silver. Included in this currency was a soiled ten dollar bill. The prosecution undertook to establish, by the testimony of one Hill, a bartender at the Chena Bar, that this particular bill was part of the missing money. When questioned, Hill frankly stated that "whether it is that bill, I couldn't say. It is a bill similar to it. I couldn't swear it was that bill. I wouldn't swear to it." He stated that he had observed a soiled ten dollar bill like this one in the cash register on September 14, 1945.

When arrested on the morning of September 16, 1945, appellant was in bed. The only clothes he was shown to possess were his underwear, a dark colored shirt and trousers, and a gray hat. He did not have

[1] In his testimony, Hammond stated that "there should have been $1217 altogether. We had received $188 so there was $1079 gone." The discrepancy of $50 in these amounts forces us to assume that this erroneous calculation is due to an error in transcribing the reporter's notes (in the Transcript of Testimony and Proceedings) and that the figure of $1217 should appear as $1267 or that the amount missing should be shown to be $1029.

in his possession a tan colored jacket, a white shirt, or a tie.

Ferguson, the owner of a black pick-up truck, was a witness for the prosecution. He testified that on the night the money was stolen, he picked up appellant and drove him to a "nite-spot" where appellant borrowed a sum of money from one Gilbertson, the operator of the place. From the money so obtained, appellant repaid a ten dollar loan he had previously secured from Ferguson. The amount appellant borrowed from Gilbertson was not disclosed by any testimony and Gilbertson was not called as a witness. There is nothing in the testimony to indicate that the money found in appellant's pocket at the time of his arrest was not or could not have been the money he obtained in the loan from Gilbertson.

The prosecution insists to us that the burden was on Karn to produce Gilbertson to affirmatively prove that Karn had "borrowed a great sum" from him, which included the money found on Karn when arrested. It also urges that such a showing by Karn "was a matter of defense"; that the prosecution produced Ferguson to establish by his testimony that Karn had secured the loan while with him and that Karn was, at the time, "in straitened circumstances". Whatever it may have tended to prove, this testimony fell short of establishing that the amount so borrowed was not equal to or in excess of the amount of money found on appellant a few hours later.

The burden at all times was on the prosecution to prove beyond a reasonable doubt that Karn was guilty. Karn did not carry the burden of proving his innocence by producing Gilbertson, who, so far as the record shows, was equally available to the prosecution. If the prosecution had desired to clearly establish the amount of the loan from Gilbertson to appellant, it had the same opportunity as appellant to make Gilbertson a witness. Having failed to do this, it is not in a position where it may logically place upon appellant responsibility for failing to do what it also failed to do, and to that extent shift the burden of proof in this particular matter.

It appears to be the theory of the prosecution that after Ferguson and appellant visited the Gilbertson place, and later parted, appellant stole Ferguson's truck to go to the Chena Bar for the purpose of breaking in and stealing property therefrom; that he used a crowbar to effect an entry and stole the money from the cash registers. A crowbar found in the Ferguson truck was established as the one used to break into the Chena Bar. Concerning this crowbar, Mrs. C. A. Dunkin testified that she had sold a similar crowbar but refused to say that she had sold it to appellant. She recalled selling him some paint and a kalsomine brush.

As indicated, the Hammond employees left the bar that night with full knowledge of the fact that the money was left in the cash registers. Nothing in the testimony indicates that appellant was aware of this fact. Hammond testified that of the missing $1079, one-half was in silver coin. This being the case, the jury had before it the fact that when taken into custody appellant had on his person a sum of paper money amounting to something over one-half of the total amount of paper money claimed to be missing. It is true that the money found on him could have been part of the stolen currency. But so far as the record shows, it is equally true that it could have been part of the money he had borrowed from Gilbertson. Whatever doubt or uncertainty resides in this situation was not eliminated by the testimony of witnesses for the prosecution.

The only attempt made by the prosecution to directly link the money found in appellant's possession at the time of his arrest with the money stolen from the Chena Bar was by the testimony of witness Hill. His attempted identification of the soiled ten dollar bill found in the possession of appellant as one that was in the cash register of the Chena Bar on the night of the theft was so vague and unsatisfactory as to create a reasonable doubt that the said bill was a part of this Chena Bar money. The bill was soiled, but so much may be said of a lot of paper money.

It is true that actual possession of stolen property may be shown, but it is

equally true that the prosecution must also prove, beyond a reasonable doubt, that the property found in possession of the accused is, in truth and in fact, the identical property which was stolen. A bare assertion that property in the hands of accused is "similar property" or property that "looks like it", is not sufficient to establish such property as the stolen property.

The burden is not on a defendant in a criminal case to prove his innocence since the burden rests upon the prosecution to establish every element of the crime with which he is charged, to a moral certainty and beyond reasonable doubt. For this reason, Karn was not required to prove, or attempt to prove (in the face of this unsatisfactory and unconvincing identification by Hill) that his ten dollar bill was not part of the Chena Bar money; the burden of proving beyond a reasonable doubt that this identical bill was part of the loot was properly on the prosecution. We do not question the right of the prosecution to prove such matters by circumstantial evidence if such evidence be sufficient to create a legitimate and sustainable inference of guilt, which satisfies beyond a reasonable doubt the minds of the jurors. But the evidence here offered to show that the ten dollar bill *was* the identical bill that Hill had seen in the cash register prior to the theft was so vague and unconvincing that it loses all probative weight in a case like this. It fails in respect to being convincing proof of the fact it sought to establish. The testimony of Hill regarding this bill reflects too much guesswork and uncertainty.

Appellant did not furnish a bill of exceptions. Because of this fact, appellee caused the court reporter to prepare and certify for our use a transcript of the trial testimony. Appellee assures us that it is an accurate record of the testimony and we accept it as such. An inspection of the records before us reveals that appellant did not object or except to the instructions and they were not made part of the record on appeal. For this reason we are not obliged to consider them but since appellant, in his brief, criticizes two of the instructions, we have considered them and find his objections without merit.

Appellant, who was identified as an escapee from a jail, did not take the stand or offer any witnesses. At the end of the government's case, he challenged by motion the sufficiency of the evidence to support a conviction and moved for a directed verdict of acquittal. It was denied and the case submitted to the jury after argument of counsel. A motion for a new trial was denied. One other matter may well be mentioned since it bears directly on a question of trial procedure. It arose after the motion for a directed verdict had been made and denied. Certain exhibits which had been received in evidence to sustain the burglary charge in Count I of the indictment, were sent to the jury room by the court. These included the crowbar and other items. It was (as the prosecution states) an inadvertence and a mistake, but it is claimed that no showing is made that the jury made use of them in their deliberations. The record shows that the court instructed the jury "not to consider the matters set forth in Count One", but despite this admonition we feel that the presence of these exhibits weakened the force of the instruction to a degree which seriously prejudiced appellant's rights. What influence a contemplation of these items may have had on the jury is problematical. It was the theory of the government's case (on the evidence) that there had been a felonious breaking and entry. While this charge had been abandoned, the crowbar used to effect a felonious entry and the other items to prove such an entry were in the jury room to suggest to the jury that if the claim of the government that Karn had stolen the money and was thereafter in possession of a part of it was true, it was in all probability the crowbar used by Karn to break into the Chena Bar in order to accomplish the theft. Otherwise (under the government's theory) there would be absent a rational explanation for his possession of part of the stolen money. Our disposition of the case however makes it unnecessary to pass on this particular issue raised by appellant, since,

as indicated above, we find that the evidence is wholly insufficient to sustain a verdict of guilty and so hold.

■ When the motion for a directed verdict was made, the trial judge, as a matter of law, should have instructed the jury to render a verdict of acquittal. The right of appellant to a verdict of acquittal fully matured when he made his motion. To remand the case with directions to grant new trial would, in our judgment, be a serious invasion of rights which accrued to him in the lower court and would strip away, without just cause, the real effectiveness of a reversal on appeal in cases of this kind. (See comment in Ex parte U. S.)[2]

■ While adhering to the view that this court may remand the case with directions to discharge the appellant, we are also persuaded that Rule 29 of the Federal Rules of Criminal Procedure is properly applicable to this situation, even though the trial was held before the new criminal rules became effective, since this proceeding is "pending" within the meaning of Rule 59. See United States v. Bozza, 3 Cir., 155 F.2d 592, 596. This simplified procedure is suitable to the case at bar.[3]

The judgment of the district court is reversed and the cause remanded to the district court with directions to vacate the judgment of sentence herein and to enter a judgment of acquittal of the appellant.

---

[2] The power of an appellate court to take such action has not always been free from doubt and the feeling that such procedure would interfere with the jury's function has appeared and reappeared in high places. See Slocum v. New York Life Ins. Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879, Ann.Cas.1914B, 1029, and the dissent by Justice Black in Galloway v. United States, 319 U.S. 372, 396, 63 S.Ct. 1077, 87 L.Ed. 1458. The recognition given by the Advisory Committee, in their notes to Rule 29 of the Criminal Rules, 18 U.S.C.A. following section 687, of the fact that the rule is similar in civil and criminal cases was early established in Sparf v. United States, 156 U.S. 51, 105, 15 S.Ct. 273, 39 L.Ed. 343. The power of an appellate court to direct the lower court to do what in law it should have done was admitted in the early case of Ballew v. United States, 160 U.S. 187, 16 S.Ct. 263, 40 L.Ed. 388, and then denied in Slocum v. New York Life Ins. Co., supra, but with four justices dissenting. Several years later the Supreme Court re-examined the rule, and in Baltimore & O. Line v. Redman, 295 U.S. 654, 659, 55 S.Ct. 890, 79 L. Ed. 1636, approved the views expressed by Justice Hughes in the dissent in the Slocum case. Such a procedure is not in derogation of the jury's powers, since the trial judge, when faced with a motion for a directed verdict, (the earlier demurrer to the evidence, the later motion for judgment of acquittal under the new rules, and the motion for a directed verdict are in substance the same) must decide a *question of law*. That question is whether there is any evidence from which the jury could find a verdict. The erroneous decision of a trial judge cannot convert that question of law into a question of fact. It remains a question of law properly to be decided by the appellate court, and when so decided, (as it is here) there remains nothing to be done by the district court save enter a judgment of acquittal. For a particularly enlightening discussion see Ex parte United States, 7 Cir., 101 F.2d 870, 131 A.L.R. 176, affirmed by an equally divided court, 308 U.S. 519, 60 S.Ct. 177, 84 L.Ed. 441; Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L. Ed. 1321 (on the function of the jury); Helis v. Ward, 308 U.S. 365, 60 S.Ct. 283, 84 L.Ed. 327. Cf. New York Life Ins. v. Brown, 4 Cir., 99 F.2d 199, 203; Lewis-Kures v. Walsh, 2 Cir., 102 F.2d 42, 44, certiorari denied 308 U.S. 596, 60 S.Ct. 132, 84 L.Ed. 499; Lowden v. Denton, 8 Cir., 110 F.2d 274, 278, certiorari denied 310 U.S. 652, 60 S.Ct. 1100, 84 L.Ed. 1417; Pessagno v. Euclid Inv. Co., 72 App.D.C. 141, 112 F.2d 577; United States v. Halliday, 4 Cir., 116 F. 2d 812, 816; West Virginia Pulp & Paper Co. v. Cone, 4 Cir., 153 F.2d 576, 582; Ryan Distributing Corp. v. Caley, 3 Cir., 147 F.2d 138; United States v. Tatcher, 3 Cir., 131 F.2d 1002.

[3] Rule 29 abolishes the motion for a directed verdict, and substitutes a general motion for a *judgment* of acquittal. If it is granted the court does not instruct the jury to bring in a verdict of not guilty, but immediately enters a *judgment* of acquittal of the defendant.