Jack L. EDWARDS, Plaintiff-Appellant,

v.

SELECTIVE SERVICE LOCAL BOARD NO. 111, Newton County, Georgia, et al., Defendants-Appellees.

No. 28910.

United States Court of Appeals, Fifth Circuit.

Sept. 15, 1970.

Rehearing Denied and Rehearing En Banc Denied Dec. 2, 1970.

288

Howard Moore, Jr., Peter Rindskopf, Atlanta, Ga., for plaintiff-appellant.

John W. Stokes, Jr., U. S. Atty., Robert E. Whitley, Asst. U. S. Atty., Atlanta, Ga., Morton Hollander, Chief, Appellate Section, J. F. Bishop, Atty., U. S. Dept. of Justice, Washington, D. C., for defendants-appellants.

Before TUTTLE, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

In this preinduction review case, the plaintiff-appellant, Jack L. Edwards (Edwards), seeks to enjoin his induction into the armed forces, alleging that he was deprived of procedural due process when Selective Service Local Board No. 111 of Covington, Georgia (Board) failed to notify him of its action on an additional ground for an occupational deferment which he submitted to the Board while his classification was on appeal to the President. This failure to notify allegedly precluded a right on the part of Edwards to make another personal appearance before the Board and to take a subsequent appeal if his deferment was not

granted. The court below granted the Board's motion to dismiss on the basis that the prohibition found in Section 10 (b) (3) of the Military Selective Service Act of 1967 [1] barred jurisdiction to entertain preinduction review in this case. We agree that jurisdiction to consider Edwards' complaint at this stage is precluded and therefore affirm.

Since this appeal is from the dismissal of a complaint, the facts alleged in that document form the factual base for our review. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The complaint is succinct and the background setting is most readily provided by directly quoting the following portion:

"The applicable facts are as follows:

a. In January, 1968, while he was classified II-S [student deferment] by defendant Selective Service Local Branch No. 111 (hereafter defendant Board), plaintiff applied for II-A [occupational deferment] classification on grounds that his occupation doing research in psychology under contract from the Office of Naval Research was in the national interest;

b. On September 17, 1968, plaintiff was classified II-A by defendant Board, said classification to run until September 1, 1969;

c. On December 17, 1968, plaintiff was notified by defendant Board that he was classified I-A [available for military service], his change in classification, on information and belief, due to an opinion rendered his board by the State Director;

d. On January 14, 1969, plaintiff requested a personal appearance before his local board;

e. The personal appearance having been unavailing, plaintiff appealed to the State Appeal Board from his I-A classification on February 18, 1969;

f. On March 25, 1969 said State Appeal Board denied plaintiff's request and continued him in Class I-A, by a vote of 2 to 1;

g. On April 14, 1969, plaintiff received word from Hon. Jack Vaughn, Director of the Peace Corps, that he was invited to 'train for Peace Corps service in Brazil, to work in fishing cooperatives;'

h. On April 20, 1969, plaintiff appealed denial of his request for II-A to the President;

i. On April 30, 1969, plaintiff sent in a second request for II-A classification, on grounds of his acceptance in the Peace Corps;

j. On June 11, 1969, plaintiff was classified I-A by the President;

k. On June 17, 1969, plaintiff inquired of defendant Calloway as to the status of his request for deferment on grounds of service in the Peace Corps. She informed defendant that his request for that second deferment had been denied by the Presidential appeal board along with his first request. She further informed plaintiff he could not appeal from this denial;

l. On June 19, 1969, plaintiff received orders to report for induction from defendant Board, to report on July 1, 1969, at either his local board or the Armed Forces Entrance and Examining Station in Atlanta, Georgia.

"The action of defendant Board in not informing defendant of their action upon his request for deferment because of Peace Corps service was a substantial denial of due process. Because his local board never informed him that they acted on his claim, plaintiff was not able to ask for a personal appearance or for an appeal to the State Appeal Board or for an appeal in proper channels to the President. The action of the defendant board in denying due process violates the Fifth and Fourteenth Amendments, United States Constitution, and the law and regulations of the Selective Service System."

---

1. 50 U.S.C.A.App. § 460(b) (3). The pertinent part of the text is quoted on page 4, *infra.*

Edwards moved the district court for a temporary restraining order and was given a hearing on June 30, 1969, the day preceding his scheduled induction. At that hearing the case was submitted upon the facts as stated in the verified complaint. The court declined to enjoin his scheduled induction. It subsequently refused declaratory relief and dismissed the action.

At the outset, we emphasize that this appeal does not decide whether the Selective Service System properly classified Edwards nor do we decide whether their procedures were free of error. We only decide that the trial court correctly ruled that Section 10(b) (3) bars judicial review of the Board's actions in processing his classification prior to his actual induction. Thus, we do not pass upon the merits of the registrant's ultimate right to the classification he sought.

■■ This court and the court whose order we review are each and both inferior courts of limited jurisdiction. The route of our reasoning properly starts with the presumption that we lack subject matter jurisdiction until it is demonstrated to exist. This has long been a basic tenet of federal jurisprudence. Turner v. Bank of North America, 4 Dall. 8, 1 L.Ed. 718 (1799). The power to ordain and establish these courts is vested in the Congress; and, with exceptions not pertinent here,[2] Congress has the power to give, withhold and restrict our jurisdiction. See e.g., C. A. Wright, Federal Courts § 10, at 22–26.

The path of the search for statutory authority to proceed is narrow and short, for rather than even an equivocal grant of jurisdiction, we find a specific bar to jurisdiction over the subject matter of this case in its preinduction status. This prohibition is expressed as part of Section 10(b) (3) of the Military Selective Service Act of 1967. The pertinent portion reads as follows:

"* * * No judicial review shall be made of the classification or processing* of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title [section 462 of 50 U.S.C. App.], after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: Provided, That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant. * * * *" (*This emphasis supplied)

■ There is one constitutional exception to the above statutory language—the writ of habeas corpus—which obviously can only be employed as a postinduction remedy and is therefore not pertinent to the cause sub judice.[3] In addition, there is a much narrower court-made exception, which found its genesis in Oestereich v. Selective Service Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1969), its only Supreme Court reiteration in Breen v. United States, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970) and its limits defined in Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968).[4] Oestereich and Breen involved draft board actions which utilized delinquency regu-

---

2. See Battaglia v. General Motors Corp., 169 F.2d 254 (2d Cir. 1948), cert. denied 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425 (1948).

3. Congress took note of this post-induction habeas corpus right in enacting the Military Selective Service Act of 1967. See S.Rep. No. 209, 90th Cong. 1st Sess., 10.

4. In a one-sentence Per Curiam order citing only Clark v. Gabriel, the court affirmed the action of a three-judge district court in dismissing a preinduction review case in Boyd v. Clark, 287 F.Supp. 561 (S.D. N.Y.1968) aff. 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969).

lations [5] to deprive otherwise qualified registrants of a ministerial exemption [6] and an undergraduate collegiate deferment which Congress had expressly granted.[7] Preinduction judicial review of these actions was permitted.[8] Clark v. Gabriel refused to sanction an application of the exception which would permit preinduction judicial review of a draft board action which allegedly refused a discretionary classification without basis in fact and because of hostility and bias.[9]

---

5. See 32 C.F.R. § 1617.1 and 32 C.F.R. § 1642.4. These delinquency regulations were wholly negated in a post-induction suit. Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970).

6. 50 U.S.C.A.App. § 456(g) provides in pertinent part:
    "Regular or duly ordained ministers of religion, as defined in this title, * * * and students preparing for the ministry under the direction of recognized churches or religious organizations, * * * *shall be exempt from training and service* (but not from registration) under this title." (emphasis supplied)

7. The applicable part of 50 U.S.C.A.App. § 456(h) (1) covering student deferments provides:
    "Except as otherwise provided in this paragraph, the President *shall,* under such rules and regulations as he may prescribe, *provide for the deferment* from training and service in the Armed Forces of persons satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning and who request such deferment." (emphasis supplied)

8. The rationale of these decisions is epitomized in these brief extracts:
    *Oestereich* (Per Mr. Justice Douglas):
    "To hold that a person deprived of his statutory exemption in such a *blatantly lawless* manner must either be inducted and raise his protest through habeas corpus or defy induction and defend his refusal in a criminal prosecution is to construe the Act with unnecessary harshness. As the Solicitor General suggests, such literalness does violence to the clear mandate of § 6(g) governing the exemption. *Our construction leaves § 10(b) (3) unimpaired in the normal operations of the Act.*
    * * * * *
    "Since the exemption granted divinity students is plain and unequivocal and in no way contested here,[7] and since the scope of the statutory delinquency concept is not broad enough to sustain a revocation of what Congress has granted as a statutory right, or sufficiently buttressed by legislative stand-ards, we conclude that preinduction judicial review is not precluded in cases of this type."
    (emphasis added)

    ---

7. We would have a somewhat different problem were the contest over, say, the quantum of evidence necessary to sustain a Board's classification. Then we would not be able to say that it was plain on the record and on the face of the Act that an exemption had been granted and there would therefore be no clash between § 10(b) (3) and another explicit provision of the Act."
    *Breen* (Per Mr. Justice Black):
    "We are consequently unable to distinguish this case [*Breen*] from *Oestereich.* In both situations a draft registrant who was required by the relevant law not to be inducted was in fact ordered to report for military service. *In both cases the order for induction involved a 'clear departure by the Board from its statutory mandate.'* Oestereich, *supra,* at 238, 89 S.Ct. at 416, and in both cases § 10(b) (3) of the Act should not have been construed to require the registrants to submit to induction or risk criminal prosecution to test the legality of the induction order."
    (emphasis supplied)
    Two circuits have permitted preinduction review where delinquency regulations were applied to effect reclassification: Shea v. Mitchell, 421 F.2d 1162 (D.C.Cir.1970); Bucher v. Local Bd. #2, 421 F.2d 24 (3rd Cir. 1970).

9. The Per Curiam stated in part:
    "In *Oestereich* the delinquency procedure by which the registrant was reclassified was [1] without statutory basis and [2] in conflict with petitioner's rights explicitly established by the statute and [3] not dependent upon an act of judgment by the board. Oestereich, as a divinity student, was by statute unconditionally entitled to exemption. Here, by contrast, there is [a] no doubt of the board's statutory authority to take action which appellee challenges, and [b] that action inescapably involves a determination of fact and an exercise of judgment."

■ Fundamentally, these controlling precedents hold that 10(b)(3) cannot sustain such a literal reading as would forbid preinduction judicial interruption of classification or processing of any registrant by local boards, appeal boards or the President where such classification or processing is (1) without statutory basis, (2) conflicts with rights explicitly established by statute *and* (3) is not dependent upon an act of judgment by selective service officials. Such action is *blatantly lawless* and may be interdicted by judicial action when it occurs. On the other hand, such classifications or procedures as are (a) within the statutory authority of the Selective Service System and (b) involve the exercise of discretion, cannot be interfered with by court action before induction.

The heart of Edwards' complaint was the allegation that the failure of the Board to inform Edwards that they had acted on his claim for an occupational deferment *on the basis of his invitation to train for Peace Corps work* deprived him of his procedural right to ask for a personal appearance and an additional subsequent appeal from his classification as I-A. Thus, the type of classification that Edwards sought is not altogether controlling as it was in *Oestereich* and *Breen.* The paramount issue in the present appeal is the manner in which Edwards was processed. His requested occupational deferment classification is of only tangential importance.

To follow the course charted for us by *Oestereich, Breen* and *Clark,* we must examine the law and the regulations to determine whether a failure to notify Edwards of the action taken in processing his classification was outside the pale of the Act so as to be blatantly lawless, because we recognize that a patently unauthorized regulation governing procedures to be followed in classification would be equally as lawless as an impermissible regulation which operates to revoke a classification which is substantively required by the Act.

The law makes a broad grant of power to the President to prescribe necessary rules and regulations,[10] to appoint administrative officials [11] and local appeal boards.[12] These local and appeal boards are empowered to act and certain appeals are permitted under the following grant of authority:

"Such local boards, or separate panels thereof each consisting of three or more members, shall, *under rules and regulations prescribed by the President,* have the power within the respective jurisdictions of such local boards to hear and determine, subject to the right of appeal to the appeal boards herein authorized, all questions or claims with respect to inclusion for, or exemption or deferment from, training and service under this title, of all individuals within the jurisdiction of such local boards. The decisions of such local board shall be final, *except where an appeal is authorized* and is taken *in accordance with such rules and regulations as the President may prescribe.*" [13] (emphasis supplied)

After vesting authority in appeal boards to hear and determine appeals, Congress stated:

"* * * The decision of such appeal boards shall be final in cases before them on appeal unless modified or changed by the President. *The President, upon appeal* or upon his own motion, *shall have power to determine all claims or questions with respect to inclusion for, or exemption or deferment from training and service under this title, and the determination of the President shall be final.*" [14] (emphasis supplied)

To conclude our references to statutory authority before considering applicable regulations, we note that the occupational deferment which Edwards

---

10. 50 U.S.C.A.App. § 460(b) (1).

11. Id. (b) (2).

12. Id. (b) (3).

13. Id. (b) (3).

14. Id. (b) (3).

sought was not congressionally mandated or defined but was left within the President's discretion under rules and regulations he might prescribe.[15]

A number of regulations have a bearing on the resolution of this appeal. The first of these relate to the criteria established for entitlement to an occupational deferment. The President defined this classification category as follows:

"\* \* \* a registrant's employment in industry or other occupation, service in office, or activity in research, or medical, scientific, or other endeavors, shall be considered to be necessary to the maintenance of the national health, safety, or interest only when all of the following conditions exist:

(1) The registrant is, or but for a seasonal or temporary interruption would be, engaged in such activity.

(2) The registrant cannot be replaced because of a shortage of persons with his qualifications or skill in such activity.

(3) The removal of the registrant would cause a material loss of effectiveness in such activity." [16]

Since we are testing the sufficiency of a pleading rather than reviewing proof, it is important to note that in his complaint Edwards did not aver or charge either that his university research work or his invitation to train for Peace Corps work was prima facie evidence that he fulfilled any one, much less all three, of the essential conditions required to entitle him to a change in classification from I-A to II-A, nor did he allege or charge that the Board or the Appeals Board or the President had granted such a classification to other applicants similarly circumstanced to himself. Thus his complaint, if confessed, did not establish that he had made a prima facie case for deferment or exemption classification on

the merits.[17] In fact, his Peace Corps invitation could not have complied with requirement (1) and he did not allege that he met requirements (2) or (3).

Two additional sections of the regulations need explication. The first covers the procedures governing the reopening of a registrant's classification for further consideration. The parts which appertain here are as follows:

"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, \* \* \* if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; [18]

"(a) The local board shall reopen and consider anew the classification of a registrant upon the written request of the State Director of Selective Service." [19]

These reopening regulations have been the subject of extensive post-induction litigation in this and most other circuits and recently were the subject of a unanimous decision in a post-induction case by the Supreme Court. Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970) declared that where a registrant proves he made out a prima facie case for reclassification a board cannot deprive the registrant of the right to appear and if unsuccessful to appeal, by simply refusing to reopen his file, even though the applicable procedural regulation is couched in permissive rather than mandatory terms. Of greatest importance to the decision of the present appeal, however, are these factors in *Mulloy:* (1) it did not involve preinduction review, (2) the registrant was required to demonstrate a prima facie

---

15. 50 U.S.C.A.App. § 456(h) (2).

16. 32 C.F.R. § 1622.23.

17. *Cf.* Magaro v. Cassidy, 426 F.2d 137 (5th Cir. 1970) [No. 27940, April 23, 1970], wherein this court found that a registrant who requested that his clas-

sification be reopened made such a cogent showing that his board's refusal to reopen was arbitrary and unreasonable in a post-induction habeas corpus proceeding.

18. Id. § 1625.2.

19. Id. § 1625.3.

case for entitlement to the new classification, (3) the failure to reopen was classified as an abuse of discretion and (4) the jurisdictional limitation imposed on preinduction judicial review was referred to as heightening the need for administrative review in the fair operation of the Selective Service System. To read *Mulloy* as treating a refusal to reopen under circumstances present here as an action that is blatantly lawless and comparable to the denial of a congressionally mandated deferral or exemption is to ignore its true setting and one of its major postulates.

■ The final group of regulations concern procedures governing a registrant's right to appeal to the President.

"When a registrant has been classified by the appeal board and one or more members of the appeal board dissented from that classification, the registrant may appeal to the President within 30 days after the mailing by the local board of the Notice of Classification (SSS Form 110) notifying the registrant of this classification by the appeal board.[20]

"An appeal to the President under the provisions of § 1627.3 shall be taken by filing with the local board a written notice of appeal.[21]

"(a) When an appeal to the President is taken, the local board shall (1) notify the registrant that the appeal has been taken whenever it is taken by any person other than the registrant; (2) if the registrant's file is in its possession, forward the *entire* file to the State Director of Selective Service; and (3) enter on the Classification Record (SSS Form No. 102) under "Remarks" the date the file is forwarded or the date it receives notice that an appeal to the President has been taken.

"(b) When an appeal to the President is taken, the State Director of Selec-

tive Service shall check the file which is in his possession or which is forwarded to him to be sure that all procedural requirements have been properly complied with, including notice to the registrant that such an appeal has been taken, and, if he discovers any procedural defects, return the file for correction. *If any information has been placed in the file which was not considered by the local board in making the classification from which the appeal to the President is taken, the State Director of Selective Service shall review such information and, if he is of the opinion that such information, if true, would justify a different classification, of the registrant, return the file to the local board with instructions to reopen the registrant's classification and classify the registrant anew.*

"(c) When the State Director of Selective Service has complied with the provisions of paragraph (b) of this section, he shall, unless the file is returned to the local board, forward the file to the Director of Selective Service. (emphasis supplied)[22]

The invocation of Presidential appeal procedures has the effect under the directive of Congress quoted above,[23] of placing in the President the power to finally determine "all claims or questions" concerning a registrant's classification. It is therefore patently reasonable for the President to adopt regulations requiring that the *entire* file in the hands of the local board be forwarded to the State Director who is charged with the duty of reviewing this information and exercising his discretion to determine if any such information shows a prima facie requirement of further local board action. This requirement does not clash with the portion of the same section of the Act providing that local boards act *under Presidential rules* to review matters presented to them at times

20. 32 C.F.R. § 1627.3.

21. Id. § 1627.4.

22. Id. § 1627.5.

23. Page 7, *supra.*

other than when a Presidential review is in process.[24]

Certainly the fact that the Board followed the mandate of the regulation to send up their entire file does not equate with any form or sort of local board ruling on a registrant's right to reopen or to be classified in any particular way. The most it indicates is that the local board is following the rule requiring them to pass all information they may have, whether acted on or not, to those who are then charged with ruling on the case.[25]

Conceding as we must that the Presidential appeal regulations are authorized by law, to hold that preinduction review is available to Edwards would require us to examine into whether the State Director of Selective Service abused the discretion which the regulations vested in him to determine that this Peace Corps training invitation made a prima facie case for Edwards to receive an occupational deferment. Leaving aside the fact that this appeal only tests the sufficiency of allegations in a complaint where the allegations did not come close to establishing that the registrant was prima facie entitled to a reopening, the very undertaking to make a judicial review of such discretionary Selective Service action is precisely the kind of litigious interruption of military manpower procurement Congress sought to prevent. Clark v. Gabriel, *supra*; *see also* Clay v. United States, 397 F.2d 901 (5th Cir. 1968) Part V, remanded on other grounds sub nom., Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969).

Two other circuits have indicated their adoption of the result we reach here. Sloan v. Local Bd. # 1, 414 F.2d 125 (10th Cir. 1969); Bookout v. Thomas, 430 F.2d 1343 (9th Cir. 1970) [July 27, 1970]. We have also studied the Third Circuit's opinion in Hunt v. Local Bd. # 197, [No. 18076, March 24, 1970] (mandate vacated and opinion recalled pending en banc reconsideration). This opinion reversed a district court decision denying preinduction review in a right to reopen action. There are two basic differences between that case and the one before us now. First, Hunt, the registrant there, alleged facts constituting prima facie entitlement to the requested III-A classification (hardship deferment), and these allegations were admit-

---

24. It is immaterial whether the interpretation placed upon these Presidential appeal regulations by this opinion or the interpretation urged by the dissent is the more reasonable of the two. To be judicially reviewable at the preinduction stage the action taken must be "blatantly lawless." Even conceding, *arguendo*, that the Board's action was based upon the less reasonable of two permissible interpretations would not make that action lawless. The fact that Congress permitted the President to make a final ruling on Edwards' request for reclassification with no further right of appeal does not deny him Fifth or Fourteenth Amendment due process. Corwin, The Constitution of The United States (Small & Jayson Ed., 1964) 1278 n. 44 cf. Groendyke Transport, Inc. v. Davis, 406 F.2d 1158 (5th Cir. 1969). Nor does the Constitution forbid the regulation which moves from the local board to the State Director the authority to make the discretionary determination that the new matter fails to present a prima facie case for reopening. cf. Helis v. Ward 308 U.S. 365, 60 S.Ct. 283, 84 L.Ed. 327 (1939). Cafeteria Workers v. McElroy 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

25. The dissent asserts that the Board was bound to notify Edwards under 32 C.F.R. § 1625.4 when they sent his entire file, including his request for occupational deferment on Peace Corps grounds to the State Director for his review. We disagree. Notice under this section is only required when a local board acts to deny a request to reopen. The point we make is that the board's action here was not a refusal to reclassify. When a registrant chooses to appeal his classification to the President, the local board is neither required nor permitted to take further action regarding the processing of the registrant's classification. They must merely transmit all of the file to the State Director who is thereupon charged with the duty of examining the file and determining whether new matter considered by the local board makes a prima facie case for reclassification. The Board did not fail to abide by § 1625.4 since it did not act on Edwards' request.

ted because the complaint was dismissed. Second, *Hunt*, like *Karlock, supra, n.* 24, concerned an appeal to the State appeal board rather than to the President, thus bringing to bear different regulations and statutory authority. We would not attempt to predict what view our brothers of the Third Circuit may ultimately adopt. We, nevertheless, expressly refrain from taking any position on the viability of the present *Hunt* opinion in this circuit on this appeal, since we are not required to disagree with the reasoning expounded in *Hunt* to reach the result required by the facts in the case *sub judice*.

One additional matter should be mentioned. We are advised that Edwards has departed from the continental limits of the United States and cannot be served with a warrant on the criminal charges now pending as a result of his failure to report for induction. Because we reach the result we do, it is not necessary for us to resolve the difficult question of his entitlement to secure a form of judicial relief which would free him from the pending criminal charges. *Compare* Molinaro v. United States, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970).

Affirmed.

TUTTLE, Circuit Judge (dissenting):

Although I agree with much that is said in the majority opinion, I must respectfully dissent.

I agree that since Oestereich v. Selective Service System, etc., 393 U.S. 233, 89 S.Ct. 414 (1968) § 10(b) (3) of the Military Selective Service Act is no longer a bar to preinduction review. I further agree that preinduction review is not limited to cases in which deferments are revoked in a blatantly lawless manner, but includes those which a registrant alleges the blatantly lawless removal of procedural rights guaranteed to him by the regulations promulgated in accordance with the Selective Service Act. The fact that a procedural right to a hearing rather than a substantive right to a deferment is involved is not controlling. The key factor in keeping with the policy of § 10(b) (3) is the extent to which the court must become involved in either the discretionary or fact finding functions of the local board. Since courts ought not to become super draft boards, preinduction review should be limited to only those cases which involve purely legal error. I am compelled to dissent for I feel that this is such a case.

At the heart of my disagreement with the majority is the proper interpretation of 32 CFR § 1627.5, already set forth in the majority opinion. However, before discussing it in detail, it should be noted that nowhere is it alleged that the State Director ever saw appellant's second claim. The record simply states that with regard to this request, his local board informed him that it had been denied along with his first request by the President. As Justice Harlan noted in his concurring opinion in *Oestereich:*

* * * a challenge to the validity of the administrative procedure itself * * * renders irrelevant the presumption of regularity. *Id.* at 243, 89 S.Ct. at 419.

Thus, even if this regulation is relevant, and I do not think it is, the record does not substantiate its proper application.

However, even assuming that the State Director did see appellant's second request, the most reasonable interpretation of § 1627.5 is that it applies to additional information concerning the same claim; that is, the classification action which is on appeal. The regulation itself speaks of *"the classification* from which the appeal to the President is taken."  In the case at bar, *"the classification"* on appeal is *the 1-A* resulting from the denial of appellant's request for a II-A deferment based on his research in psychology. Indeed, section 1627.3 of the regulations states:

Where a registrant has been classified by the appeal board and one or more members of the appeal board dissented from *that classification*, the registrant * * * may appeal to the President * * *

It is clear that at the time of the appeal board's decision nothing concerning ap-

pellant's acceptance into the Peace Corps was on file. Thus, "that classification" from which the registrant appealed to the President was *the 1-A* resulting solely from the denial of his first deferment request. It was additional information regarding this claim and this claim alone that could be reviewed at the discretion of the State Director.

There are strong policy reasons for this approach. It is simply alien to our basic notions of fairness to interpret this regulation as meaning that because one claim is on appeal to the President, the registrant is deprived of his procedural rights in all subsequent claims. Though, as the majority points out, United States v. Karlock, 427 F.2d 156 (9th Cir., 1970), dealt with a claim on appeal to the state board, the principle enunciated is fully applicable here:

> If he was entitled to any consideration of his claim, he was entitled to it at the beginning level, as well as the appellate level.

Moreover, this court has long emphasized the importance of procedural safeguards for a registrant. See Olvera v. United States, 223 F.2d 880 (5th Cir., 1955). Most recently, this court stressed the importance of a personal appearance in Margo v. Cassidy, (5th Cir.) 426 F.2d 137 stating that it is at this time that a registrant may:

> " * * * discuss his classification, * * * point out the class or classes in which he thinks he should have been placed * * * direct attention to any information in his file which he believes the local board has overlooked or

to which it has not given sufficient weight, and * * * present such further information as he believes will assist the board in determining his proper classification." Knox v. United States, 200 F.2d 398, 399 (9th Cir., 1952), quoting former provisions of 32 C.Fr. § 1624, 2(b).

Finally, the Supreme Court, in Mulloy v. United States, 90 S.Ct. 1766, has recently emphasized the importance of "a chance to be heard and an opportunity for an administrative appeal."

Clearly, in light of these cases it is totally anomolous to interpret § 1627.5 so as to deprive a registrant of a hearing and a right of appeal when he has submitted a second and separate deferment request. Though the majority correctly notes that it is the President who ultimately has power to decide "all claims and questions" of a registrant's classification, it is only reasonable to presume that any decision be based on as complete a record as possible. This is accomplished by adhering to the regulations and providing a hearing and an opportunity to perfect an appeal.

The majority also concludes that appellant failed to allege facts which would make out a prima facie case. What appellant did allege, however, was that he requested a II-A deferment for his Peace Corps activity from his local board. If they determined that he had made out a prima facie case, they were compelled to reopen, notify appellant and grant a hearing if requested. If they did not so feel, they were nonetheless compelled to notify appellant of that fact pursuant to 32 C.F.R. § 1625.4 [1]. Thus, in any event,

---

1. § 1625.4 Refusal to reopen and consider anew registrant's classification.

When a registrant, any person who claims to be a dependent of a registrant, any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, or the government appeal agent files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered

when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification. In such a case, the local board, by letter, shall advise the person filing the request that the information submitted does not warrant the reopening of the registrant's classification and shall place a copy of the letter in the registrant's file. No other record of the receipt of such a request and the action taken thereon is required.

by transmitting appellant's second request to the President without providing appellant any notice whatsoever, the local board failed to abide by the regulations. As the Eighth Circuit has recently noted in a case involving an appeal by the State Director of a local board decision where the Director refused to provide the registrant the reasons for the appeal:

> Every citizen, including youthful registrants under the Selective Service laws, is entitled to be substantively informed as to any governmental action which may affect his liberty or life. No governmental procedure may stand which fails to provide such information. To be both fairly and timely advised is fundamental to the basic concepts of due process. 'Clandestine due process' has never found favor or constitutional basis in courts of law. United States v. Cummins, 425 F.2d 646, 649 (8th Cir., 1970).

In short, the local board failed to follow the regulations. Because their errors were of a purely legal nature, I strongly believe that the lower court had jurisdiction to entertain appellant's claim, even though he had not yet been inducted. I, therefore, would reverse.

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.

TUTTLE, Circuit Judge:

I respectfully dissent from the denial of the Petition for Rehearing by the court which heard the appeal.