Jerry L. FRAMPTON, Plaintiff-Appellant,

v.

Leo W. DAVIS, Lt. Colonel Acting State Director for Louisiana Selective Service System and Local Board No. 29 Jefferson Parish, Defendants-Appellees.

No. 71–2394.

United States Court of Appeals, Fifth Circuit.

July 10, 1972.

---

# 316

Wisdom, Circuit Judge, dissented and filed opinion.

Benjamin E. Smith, Smith & Scheuermann, New Orleans, La., for plaintiff-appellant.

Gerald J. Gallinghouse, U. S. Atty., Mary Williams Cazalas, Claude J. Aucoin, Jr., Asst. U. S. Attys., New Orleans, La., for defendants-appellees.

Before WISDOM, GODBOLD and RONEY, Circuit Judges.

RONEY, Circuit Judge:

In this rather unusual suit Jerry L. Frampton, a classified conscientious objector, has challenged the right of his Draft Board to exclude from the list of available alternate service jobs the job he presently holds.

Under the Selective Service Act, a person who is exempt from military service as a conscientious objector may be ordered by his local draft board to perform civilian work "contributing to the maintenance of the national health, safety, or interest as the local board pursuant to Presidential regulations may deem appropriate." Selective Service Act of 1967, § 6(j), 50 U.S.C.A. App. § 456(j).

In submitting to Frampton a list of three types of suitable civilian work together with the names of employers with whom the work was available, the local board enclosed an administrative circular from the state director advising that Louisiana law prohibits the employment of conscientious objectors by any state, parish or municipal agency. Frampton is employed as a welfare visitor for the Jefferson Parish Department of Public Welfare.

Prior to a final selection of work for Frampton to perform, and prior to any order from the board to report for civilian work, Frampton brought this lawsuit seeking to enjoin the local board from recognizing the Louisiana law and from excluding state employment from consideration as appropriate civilian work. He bases his suit on the claim that the Louisiana law is unconstitutional.[1]

1. Louisiana Revised Statutes 42:32 provides:

> The state, its agencies and subdivisions, as well as municipalities and parishes, shall not employ knowingly any enemy alien or conscientious objector.
> For the purposes of this Section the following definitions shall apply:
> (1) An enemy alien is any person who is a national of a country with whom the United States is at war.

> (2) A conscientious objector is any person who refuses to serve in the armed forces of the nation on the ground of being a conscientious objector.
> Any public officer or anyone in charge of any state agency or board, who knowingly employs, or permits to be employed, any enemy alien or conscientious objector shall be fined one thousand dollars or imprisoned for six months.

Frampton's request for a three-judge court was denied on the ground that he did not seek to enjoin the enforcement of a state statute by an officer of the state.[2] Frampton was still employed by the parish. Frampton's employer was never made a party to the suit and no injunction was sought to prevent his being discharged by the parish under the state law.

Upon consideration of the matter by a single judge, the district court granted defendants' motion to dismiss on the ground that Section 10(b) (3) of the Selective Service Act precludes a preinduction judicial review of actions of the draft board and Frampton has not yet been ordered to report for civilian work. We affirm.

Section 10(b) (3) of the Selective Service Act of 1967, 50 U.S.C. App. 460(b) (3) (Supp. V) provides:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution * * * after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form."

It is obvious from a reading of this statute that Congress has precluded the courts from making any judicial review of Frampton's claims until he has responded either affirmatively or negatively to an order to report for civilian work. This case is not a criminal proceeding, and the civil suit is barred by Section 10(b) (3). Edwards v. S. S. Local Board No. 111, 432 F.2d 287 (5th Cir. 1970); Davis v. Members of S. S. Board No. 30, 433 F.2d 736 (5th Cir. 1970); Burnett v. United States, 433 F. 2d 1356 (5th Cir. 1970); Steiner v. Armed Forces, 436 F.2d 687 (5th Cir. 1970).

Frampton argues that the Draft Board and the State Selective Service System have acted under color of state law to limit improperly their jurisdiction and that Section 10(b) (3) does not apply. He says that he is not asking for judicial review of his classification and admits that the local board has not acted unfairly or illegally in its processing of his induction. Rather, he asserts that the Board is being forced by state law to deny him equal protection of the law and his First Amendment rights in unconstitutionally restricting his alternate service work assignment. He contends that this case is substantially similar to

---

2. The District Court order denying the three-judge court recited the following:

"Upon submission of this request to the Chief Judge of this Circuit, he declined to constitute a three-judge court at this time on the basis of the following statements made in the requesting letter:

(1) Plaintiff admits that he is presently employed by the Jefferson Parish Department of Welfare. He does not allege that he has been threatened with discharge or dismissal. The plaintiff here does not seek to enjoin state officials from enforcing LSA–R.S. 42:32, but rather seeks to enjoin the Selective Service System from recognizing and giving effect to the state statute. A three-judge court is not required unless a state statute is sought to be enjoined 'by restraining the action of any officer of such State in the enforcement or execution of such statute . . . ,' 28 U.S.C. § 2281.

(2) Section 10(b) (3) would appear to preclude this Court from granting preinduction review of the draft board's actions in this case. See: Edwards v. S. S. Local Board No. 111, 432 F.2d 287 (5th Cir. 1970); Steiner v. Armed Forces Exam. and Induc. Center, 436 F.2d 687 (5th Cir. 1970).

(3) It does not appear that plaintiff has any constitutional or statutory right to choose which type of civilian employment he will perform in lieu of induction into the military.

(4) LSA–R.S. 42:32 does not appear to have ever been construed or interpreted by the appellate courts of Louisiana.

Accordingly, the request for a three-judge court is DENIED. . . . "

the *Oestereich* [3] and *Breen* [4] line of cases which carve a limited exception, based on violation of due process, to the 10(b)(3) bar of preinduction claims.

Both *Oestereich* and *Breen* involved actions by draft boards which the Court termed as "blatantly lawless disregard" of their statutory mandate. Because the registrants burned their draft cards in protest of the Vietnam war, the draft board in each case ordered the induction of persons who had previously been found to be entitled to student deferments. Justice Black stated in *Breen* that

"In both situations a draft registrant who was required by the relevant law not to be inducted was in fact ordered to report for military service. In both cases the order for induction involved a 'clear departure by the Board from its statutory mandate,' . . . and in both cases § 10(b)(3) of the Act should not have been construed to require the registrants to submit to induction or risk criminal prosecution to test the legality of the induction order." (p. 467, 90 S.Ct. p. 666).

In both cases the Supreme Court held that the Selective Service Board was without any legal authority to deprive the registrants of the statutory exemption they had been given by Congress. Frampton's claim does not fall within the penumbra of these cases. Congress has specifically authorized the local board to determine the appropriateness of alternate civilian work to be performed by conscientious objectors and this discretion and ultimate decision-making power in the local board is implemented by Presidential regulations.

Thus, the cases upon which Frampton relies reviewed purported acts of the Board for which it had no legal authority, whereas here a review is sought of the way the Board has exercised its judgment under authority clearly given to it by statute. It is just this kind of review that § 10(b)(3) prohibits. Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968); Fein v. Selective Service System, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972). Under the principles set forth in both the majority and concurring opinions in Crowley v. Pierce, 461 F.2d 614 (5th Cir. 1972), the district court had no jurisdiction.

The district court was correct in refusing to review the merits of Frampton's claims. We do not view the decision of the district court as having determined in any way the constitutionality of the Louisiana Statute, and we express no opinion as to the probable outcome of that issue were it before us for decision. [5]

Affirmed.

---

3. Oestereich v. Selective Service System Local Board, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).

4. Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970).

5. Although Judge Wisdom would decide on this appeal the constitutional question by way of declaratory relief under 28 U.S.C. § 2201, it seems clear that the state has not had its day in court on this issue. The plaintiff proceeded initially on the theory that the Selective Service Board was a state agency, and only after the denial of the three-judge court did he seek to add the state officials as parties. He then added the state district attorney and the attorney general who, presumably, would have the responsibility of enforcing the criminal provisions of the statute, but would otherwise have nothing to do with Frampton's employment by the parish. At the hearing on the motion for summary judgment counsel for the plaintiff said:
"I was not asking that state officials be enjoined, but I was asking that a commission acting under state law be enjoined. * * *
Now, it appears that it is a federal agency, or an adjunct of a federal agency, but it is certainly acting under a state statute. And so, out of an abundance of caution, as stated in my memorandum, I joined the Attorney General of the State of Louisiana and the District Attorney, who I suppose would be charged with the enforcement of Louisiana Revised Statute 33:241. Now, that statute has never been enforced by the State of Louisiana, as far as I can determine from any judicial reports on enforcement. But, of course,

WISDOM, Circuit Judge (dissenting):

I respectfully dissent.

Frampton has, in my opinion, lost in this Court because he took a circuitous route in addition to the direct route available to him. He chose to attack the Louisiana statute by suing the draft board that relied on the statute to deny him his choice of civilian work as a state employee. This route is fraught with obstacles, as the majority opinion points out. In addition, however, Frampton, by supplemental complaint, attacked the statute head-on by suing the appropriate state officials under 28 U.S.C. § 1343(3) and seeking a declaratory judgment under the Federal Declaratory Judgments Act, 28 U.S.C. § 2201.

Frampton has standing to attack the statute. He is faced with the choice of accepting alternate service in a job other than the one he now occupies or being inducted. He must make that choice because the draft board is relying on the statute he attacks. By directly attacking the statute under 28 U.S.C. § 2201, moreover, Frampton also avoids the problem of Section 10(b) (3), 50 U.S.C. (App.) § 460(b) (3) (Supp. V), which troubles the majority.

The statute prevents conscientious objectors from securing state employment and, as a result, from using state employment in public welfare work as alternate service. I would hold the statute unconstitutional. First, federal legislation specifically sanctions the conscientious objector status. The state law preventing employment of one who secures that status is in direct conflict with the federal legislation. Second, the state law impermissibly burdens Frampton's free exercise of his First Amendment right to be a conscientious objector. Finally, the statute, singling out conscientious objectors for different treatment, has no rational relation to a legitimate state interest, to say nothing of its promoting a compelling state interest.

Because the statute is unconstitutional, the draft board may not rely on it to deny Frampton alternate service in a state employment such as the one he now occupies. Certainly, by any rational standard employment in public welfare work should be an acceptable alternate service.

---

the enforcement would not of necessity be against the person who was a conscientious objector, or enemy alien, in this case, as prescribed by that particular statute, but it would be as against his employer." (Transcript of May 28, 1971 hearing, pp. 15 and 16).

The following proceedings in the case show that the matter was decided below before the state had any chance to be heard:

March 2, 1971—Original Complaint against Selective Service State Director and Local Board.

March 16, 1971—Denial of Three-Judge Court.

April 6, 1971—Motion for Summary Judgment by U. S. Attorney.

May 28, 1971—Supplemental Complaint filed adding State District Attorney and Attorney General of Louisiana as parties defendant and praying for injunctive and declaratory relief.

May 28, 1971—Order that Supplemental Complaint be filed.

May 28, 1971—Argument before District Court on Motion for Summary Judgment. Plaintiff's attorney and U. S. Attorney present. No counsel for state present. Testimony taken of Deputy State Director of Selective Service and attorney advisor of Selective Service System.

June 3, 1971—Service on Attorney General of Louisiana.

June 7, 1971—Service on State District Attorney.

June 7, 1971—Order granting Motion to Dismiss under style of case not including state officials.

June 23, 1971—Judgment entered by Clerk of Court in favor of defendants, including State District Attorney and Attorney General.

No responsive pleading was ever filed in the trial court by either the Attorney General or the District Attorney before entry of judgment in their favor, and no brief was filed by them on this appeal and they made no oral argument before this panel.