**UNITED STATES of America**

v.

**William Frederick LONGWORTH.**
**Crim. No. 11181.**

United States District Court
S. D. Ohio, W. D.

June 7, 1967.

Thomas R. Smith, E. Winther McCroom, Asst. U. S. Attys., Cincinnati, Ohio, for plaintiff.

Arnold Morelli, Cincinnati, Ohio, for defendant.

FINDINGS AND OPINION

HOGAN, District Judge.

The defendant was indicted for refusing induction. A jury was waived. The defense is that the classification order of the Draft Board and the Board of Appeals, based on which the order of induction was issued, was invalid.

*Findings of Fact*

1. Defendant William F. Longworth, born August 21, 1942, registered for the draft at the appropriate time and, for purposes of this case, was classified 1–A by the appropriate Draft Board.

2. He married Shirley Ann William prior to 1965 and lived with her as man and wife until on or about July 5, 1966.

3. On April 14, 1966, he duly informed his Draft Board (Local No. 51, Hamilton County, Ohio) that his wife was pregnant and furnished a medical certificate indicating an expected date of delivery of September 25, 1966.

4. On April 19, 1966, he was reclassified as 3–A.

5. On or about July 5, 1966, he left his wife and unborn child (who remained at their residence in Cincinnati and apparently they still do) and shortly thereafter took up residence in Lexington, Kentucky. In Lexington, Kentucky, he began living with Kathleen (then aged 18). They lived together as man and wife, she using his name, and apparently still do.

6. Defendant advised his Draft Board of his Kentucky address on August 9, 1966.

7. That Draft Board periodically sends questionnaires to its registrants and it sent such a questionnaire to the defendant early in October, 1966. In filling out the questionnaire the defendant, on October 8, 1966, indicated to his Draft Board as follows:

"I am married—I do not live with my wife. Her address is Richfield Drive, Cincinnati, Ohio. * * * We were married July 7, 1962. * * * I have no child other than an unborn child and have already sent in a statement from a physician showing the basis of his diagnosis of pregnancy and the expected date of birth. * * * I do have dependents other than those * * * above."

The Draft Board, in accordance with its usual practice, attempted to verify the birth of the child of Shirley Ann (William) Longworth in October, 1966, and ascertained that her child, being the defendant's child, was born in September, 1966, and further verified that the defendant was no longer living with his wife and child by her.

7. Based upon that the Board on October 19, 1966, reclassified the defendant from 3–A to 1–A and notified the defendant.

8. Immediately upon the receipt of that notification and on October 22, 1966, the defendant advised his Draft Board by a letter writing as follows:

"A few weeks ago I received a questionnaire, in which asked if my wife and I were living together and if not, what was her address. I stated we

were not and gave her address and also stated that a statement of her pregnancy had already been sent in. As you have contacted her and found out no support money has been sent, you have reclassified me from 3–A to 1–A. Since we are seeking a divorce, my lawyer has told me not to send any money (she has received some support money before I saw my lawyer). Until the courts have decided the amount, whereas I will be supporting her and her child.

"The questionnaire also asked about other dependents and I stated yes. I am now living with a girl who is expecting our baby any day now. (Enclosed is a doctor's statement.) She is using my name because I do not want the birth certificate to read illegitimate. We are planning on marrying as soon as my divorce is final. I am now supporting her and soon her and the baby plus my wife and her baby. Therefore, I will have four dependents, which I believe should entitle me to another classification. If drafted it would work a hardship on this girl and my baby and all of my dependents, so please reconsider my draft status to see if I would be qualified for another classification."

9. A medical certificate accompanied that letter, signed by a Lexington Doctor, certifying that Mrs. Kathy Longworth (i. e., Kathy) was in his care for maternity reasons and that her expected date of delivery was October 5, 1966.

10. As a matter of course, this Draft Board accepts at face value statements of fact received orally or in writing from its registrants. As stated above, it does, as a matter of course, verify births based on which classifications are changed.

11. The defendant's 10/22 letter was received by the Board on 10/25. On October 25, the defendant wrote the Board a letter (received October 27) in which he said, "I hereby appeal the decision of the Local Board reclassifying me to 1–A and ask for a Dependency Reclassification of 3–A. Because of children and a wife to support. The entire situation is explained in a previous letter which you already have." On October 28, a lawyer for registrant visited the Local Board office and discussed the case. Registrant is "living with a girl (not common-law) and she is pregnant. Using registrant's name."

12. On October 28, the registrant's file was sent to the Appeal Board and the "Classification" involved was the "Classification of October 19." The Local Board did *not* have, on October 19, the knowledge imparted to it by defendant's letter of October 22 and by the lawyer's call of October 28, shown on the Board's Records to be *"New* Information" and the classification by the Local Board was therefore made without considering that information. The Local Board has never classified defendant in the light of that information or reconsidered his classification in the light thereof.

13. The Board of Appeals for the Southern District of Ohio, on December 27, 1966, and acting on the appeal, classified the defendant as 1–A.

14. The defendant, prior to any of the events described herein, in 1966, had been medically examined and found fit for military service. He exhausted his administrative remedies with respect to the reclassification—or classification as 1–A—he received an order in the usual form to report for induction on 8 March 1967, received all the usual and preliminary processing and at the induction ceremony, refused to take a forward step when requested so to do and/or to take the oath and declined induction. This occurred in this District. The only questions involved in this matter are stated in the opinion below.

15. The foregoing are all of the relevant facts which appear from the files and records of the Draft Board and/or the Appeal Board (same one referred to in footnote 1 below).

16. The defendant, at no time prior to the final action of the Appeal Board on December 27, 1966, advised the Draft Board of any further facts and the fore-

going, to repeat, are all the relevant facts in the records of the Selective Service Agencies (Board and Appeal Board).

### Supplemental Findings of Fact

These supplemental findings of fact may or may not be competent, but are made in several obvious interests and to the extent that objections were made at the trial to the evidence supporting these findings, such objections are overruled.

1. On October 26, 1966, Kathy Longworth gave birth to William David Longworth in Lexington, Kentucky.

2. Since July of 1966, the defendant and Kathy had been living together as man and wife in Lexington and still do.

3. The defendant is the father of that child and, since that child's birth, the father, mother and child have been living together as a family unit in an apartment which is under lease expiring in July, 1967, in Lexington.

4. The de facto relationship between the defendant and the child William David, is and has been since October 26, 1966, the normal de facto relationship between father and son. The apartment in which the three live was leased by the defendant for one year in July, 1966.

### Rejected Evidence and Findings

The expert testimony offered in this case through the sociologist William Poten has not been considered and is not being considered, and the objection thereto and to other oral evidence tendered at the trial (except such as has been dealt with above) is sustained.

### Opinion

This case involves two questions, one procedural and one substantive. The procedural question is whether or not the proceedings before the Local Board conformed to the regulations—if not, the defendant was deprived of due process and the induction order was invalid. We decide it initially. The result flows from an easily understandable error on the part of the Local Board. It construed the word "appeal" in the defendant's letter which it received on October 27 in a technical legal sense—i. e., transferring the whole matter before the Appeal Board and divesting the Local Board of jurisdiction. Construing the word in that technical sense, the Board was absolutely right and this Court recently had the point in a legal sense in *United States ex rel. Shott v. Tehan*. However, it is abundantly clear by overwhelming Federal appellate authority that the word "appeal," when used by a registrant in a communication to a Board, particularly when it is used in conjunction with the word "reclassification" (as it was used in this case) and most particularly when it is used in connection with imparting to the Board of new information which may, to any reasonable mind, affect the classification—to repeat, that word "appeal" when used by a draft registrant in such a context means a request for a reconsideration of his classification by the Board.

We will not quote liberally from the regulations or reported decisions. We simply refer to the decisions and the regulations and sum them up.

The regulations, 32 C.F.R. 1625.-2, et seq., as construed by the courts, require a Board to consider a request for an "appeal" as a request to reopen a classification and mandate the Board into reopening and considering anew the classification of a registrant if it is presented with facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification. The Board is mandated into at least looking at the facts as stated, considering whether it has previously known those facts when its prior classification was made and considering whether the facts stated, if true, would, to *any* reasonable mind, justify a reclassification. The problem is not whether the facts would—the problem is whether the position of the registrant is frivolous. Some say the question is whether the facts stated "prima facie" justify a change. The reason is that the whole policy of the Act is to devolve factual decisions on the Board with a personal ap-

pearance of the registrant and investigation, and so on. While an appeal board acts de novo, it acts de novo on paper work—not personal appearance. And no one would deny the value of personal appearance in any situation involving subjectivism.

The cases which establish the above statements and the construction placed on the regulations and the construction placed on the word "appeal" are as follows:

United States v. Burlich, 257 F.Supp. 906, (D.C.N.Y., 1966);

United States ex rel. Berman v. Craig, 207 F.2d 888, (3rd, 1953);

United States v. Ransom, 223 F.2d 15, (7th, 1955);

Stain v. United States, 235 F.2d 339, (9th, 1956);

United States v. Vincelli, 215 F.2d 210, (2nd, 1954);

United States v. Zieber, 161 F.2d 90, (3rd, 1947);

Townsend v. Zimmerman, 237 F.2d 376, (6th, 1956).

In the Sixth Circuit case, the Court pointed out:

" 'Though the language in the regulation is permissive merely that does not mean that a local board may refuse to reopen arbitrarily, but requires it to exercise sound discretion. That, in turn, requires, when the basis of an application is not clearly frivolous, an inquiry designed to test the asserted facts sufficiently to give the board a rational base on which to put decision.' A request to reopen based upon facts which would have entitled Townsend to be placed in Class 3–A under the Selective Service regulations would hardly have been clearly frivolous."

■ The additional facts contained in the defendant's letter of October 22 were obviously never considered by the Board for any purpose. The additional facts were certainly not frivolous and were certainly prima facie in respect of a change of classification based on 32 C.F. R. 1622.30(a) (which will be discussed

hereinafter). Nor were they frivolous and certainly presented a question of fact under subsection (b) of that regulation, since *some* reasonable mind could have concluded that induction would "result in extreme hardship" to the registrant's two children—and we must look at it *not from a point of view of the registrant, but from a point of view of the children.* There is not the slightest indication in the record that the claimed hardship classification was ever considered either by the Board or by the Appeal Board.

The second and substantive question revolves around the construction of the word "bona fide" as used in the statute and regulations hereinafter referred to. Since the question is not necessary to the determination of this case, it perhaps should be avoided. However, since it, as well as the previous ground would be ground for determination and since the second might lead to finality, whereas the first alone might not, we answer it.

§ 456 of Title 50 App.U.S.C. provides in part as follows:

"The President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service * * * of any and all categories of persons who have children, or wives and children, with whom they maintain a bona fide family relationship in their home. * * *"

Pursuant to the statute, Regulations 1622.30 have been issued, which provide "In Class 3–A shall be placed any registrant who has a *child* or children *with whom* he maintains a bona fide family relationship in their home. * * *" The same regulation further provides that the term *"child" shall include* "a legitimate or *an illegitimate child from the date of its conception.* * * *"

The question therefore in this case revolves around the factual situation presented and that statute and regulation.

We approach it in this manner.

■ First—there does not seem to be much doubt that the "critical date," or the date as of when the question is posed and to be answered is December 27, 1966. "It is universally held that the Appeal Board considers matters of classification de novo and its classification is one of first instance, not a mere affirmance or reversal of the Local Board". De Remer v. United States, 340 F.2d 712, (8th, 1965).

■■ Second—the scope of review by a District Court of a classification or reclassification has been referred to as the "narrowest" known to the law. See Davis' Administrative Law Treatise, Section 2812. The most quoted guideline is in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), reaffirmed in United States v. Seeger, 380 U.S. 163, at 185, 85 S.Ct. 850, at 864, 13 L.Ed.2d 733 (1965) as follows:

> "The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

■ In addition, the cases establish that exemptions and deferments claimed under Section 456 and regulations promulgated thereunder are matters of legislative grace and "the Selective Service registrant bears the burden of clearly establishing the right to the exemption." See United States v. Willard, 312 F.2d 605 (6th, 1963); United States v. Beatty, 350 F.2d 287 (6th, 1965). In those cases the Sixth Circuit indicated that the fundamental question is one of "arbitrariness."

■ Furthermore, there does not seem to be much dispute that the District Court's review is limited to the record of the proceedings before and information submitted to the draft boards and the appeal boards, Estep v. United States, supra, at 118, 66 S.Ct. at 425, so that, unless the portal is opened by a conclusion of capriciousness or arbitrariness, there is no place for oral or additional evidence at a criminal trial. United States v. Mohammed, 288 F.2d 236 (7 Cir. 1961).

Before returning to the actual problem, another preliminary is in order. We deal here with the words "bona fide" which we find both in a statute and a regulation. Bona fide is defined in Webster's Third New International Dictionary as follows:

> "1: made in good faith without fraud or deceit; legally valid; 2: sincere; made with earnest or wholehearted intent * * *"

It is interesting to note that one of the dictionary equivalents is "sincere." The Supreme Court has stated that "bona fide" connotes "substantiality"—United States v. Carolina Freight Carriers Corp., 315 U.S. 475, at page 480, 62 S.Ct. 722, at page 725, 86 L.Ed. 971 (1941). The Seventh Circuit has said of the phrase, "Bona fide resident" that "[a]t best, it is an elusive expression and one so peculiarly related to the facts in any given case 'that each new case must be decided on the basis of its own unique attendant circumstances.'" Sochurek v. Commissioner of Internal Revenue, 300 F.2d 34 (7 Cir., 1962).

We deal therefore not with a determination of objectivity based on objectivity, but we deal with subjectivity. The question here is not of the type with which the Supreme Court was concerned in Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953), but is rather of the type with which the Court was concerned in Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955)—Do the facts cast doubt on sincerity?

"Bona fide" is an adjective. It implies a person and it implies his surroundings in fact. When used in a statutory law it also implies surroundings.

In its context here we have two basic questions, one of law and one of fact. The question of law is what is its statutory meaning. The question of fact is did the defendant have that "bona fides" —as so defined and construed.

The Appeals Board considered "bona fide" as involving the defendant's sincerity toward his family,[1] i. e., his unborn child by Kathy and *based on that construction* the Appeals Board in this case concluded that the family relationship between the defendant and his second child was not "bona fide." The fact that child was illegitimate was irrelevant. The fact that the defendant and the young lady with whom he was living as man and wife were unmarried (and could not even form a common law marriage relationship) is just as irrelevant. There can be no question that they were living in a "home" together on the crucial date.

Was there any basis in fact for the conclusion of the Board that the relationship between the defendant and his second child was not "a bona fide *family* relationship"? We think there was.

In early October the defendant, being then the expectant father of two unborn children, limited his disclosure to the Board to that fact only in relationship to one. The defendant at that time indicated at least some danger "that his demeanor appeared shifty or evasive or that his appearance was one of unreliability." Witmer v. United States, supra, at page 382, 75 S.Ct. at page 396.

Early in October, being the father of a child born in Ohio in September, he relied in his questionnaire on a continued 3–A status on what he had "already sent in"—last April. He relied not on his in-fact unborn child in Kentucky, but on a child which he either knew had been born in Ohio, or had so completely abandoned that he did not know. Furthermore, being somewhat brought to his senses by his reclassification by the local Board, this is what he said, "I am now living with a girl who is expecting our baby any day now. * * * We are planning on marrying as soon as my divorce is final. * * * I will have four dependents, which I believe should entitle me to another classification."

A board which takes statements of registrants at face value has no difficulty if the statement is the whole face. To the Board, though, the face consists of its whole file and not one letter by itself. The file at that point and at the time of the final Board action indicated that this defendant lived seven months in a home in Ohio with a wife and an unborn child resulting in a family relationship with a child so insubstantial—or so lacking in bona fides—that the defendant was capable of and did abandon it prior to its birth. Who is to say that this Board in determining an absence of bona fides—when the time spent under a roof with this Kentucky unborn and born child was less than six months—had no basis in fact. Certainly not this Court. There is an old saying that "[e]ven firemen become dubious after two false alarms." Witmer v. United States, supra, at page 383, 75 S.Ct. at page 396.

Be all that as it may—the Board's conclusion may be sustained *only* if its basic construction of the meaning of "bona fide" *as used in the statute,* and as referring to intent toward the child, is correct.

That is a question of law, United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1964) in which we are not bound in any way by the construction of the Board. We may and do, respectfully, differ. In our view, the important consideration is that the term "bona fide" is used in a basic Universal Military Training Statute and that, therefore, the good or bad faith test is whether or not, in what a registrant did, he was activated by an intent to change

1. This fact is evident from letters of the Selective Service authorities to the de-   fendant and his representatives which are in the Board's file.

or affect his draft classification—stated bluntly, was he trying to "duck the draft."?  It seems a reasonable conclusion that the defendant who was clearly 3–A when he left his wife and her child in July of 1966 was not activated in any respect by any "mala fide" draft intent in his relationship with Kathy and her unborn child thereafter.  Since the Board applied (in our view) a wrong legal standard of "bona fides" we would and do acquit for that reason, too.

This case has been well briefed and presented on both sides and there was certainly probable cause for the prosecution of it.