**Robert J. CROWLEY, Petitioner-Appellee,**

v.

**Peter P. PIERCE, Jr., as State Director of Selective Service, Respondent-Appellant.**

**No. 71-2714.**

United States Court of Appeals, Fifth Circuit.

June 7, 1972.

Rehearing Denied July 11, 1972.

Harvey E. Schlesinger, Asst. U. S. Atty., Jacksonville, Morton Hollander, William D. Appler, Department of Justice, Washington, D. C., L. Patrick Gray, III, Asst. Atty. Gen., John L. Briggs, U. S. Atty., for respondent-appellant.

William H. Maness, Jacksonville, Fla., for petitioner-appellee.

Before JOHN R. BROWN, Chief Judge, GOLDBERG and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

The issue on this appeal is whether Section 10(b) (3) of the Military Service Act of 1967, 50 U.S.C. App. § 451 et seq., prohibits judicial consideration prior to induction of appellee's claim that his local draft board erroneously assigned him to the First Priority Selection Group for I–A draft registrants. The district court reached the merits of appellee's claim and enjoined his induction into the Military Service by holding that Section 10(b) (3), supra, did not destroy federal jurisdiction. We reverse.

The facts are undisputed. Robert J. Crowley was initially placed in Class II–A because of his civilian occupation as a public school teacher. When Crowley left the teaching profession his local draft board reclassified him I–A, available for military service, on October 21, 1970. Crowley personally appeared before the local board to contest the I–A classification, but the board refused to alter its original determination. On December 23, 1970, the local board informed Crowley that his file would be forwarded to the State Appeal Board and that he had been placed in the Extended Priority Selection Group (hereinafter Extended Group). Crowley immediately contended before the local board that he was improperly in the Extended Group and that he should have been placed in the First Priority Selection Group (hereinafter First Group).

On February 16, 1971, the State Appeal Board considered Crowley's appeal and classified him I–A with no member dissenting. An induction order was issued instructing Crowley to report for duty on March 22, 1971.

At this point Crowley abandoned his claim that the I–A classification was erroneous and filed suit in federal district court to enjoin his induction on the ground that the draft board improperly assigned him to the Extended Group. The district judge agreed with Crowley and declared the induction order null and void on April 13, 1971.

For I–A draft registrants such as Crowley the difference between being placed in the Extended Group or in the First Group meant the difference between being drafted and remaining a civilian in 1971. Because of his date of birth Crowley's lottery number was 188. During 1970 the highest lottery number reached for induction by Crowley's draft board was 195. Thus, absent any appeal on Crowley's part, he probably would have been inducted in 1970 since his lottery number was within those numbers called for induction in that year. However, since Crowley appealed his I–A classification to the state draft board he could not be inducted while the appeal was pending. Thus, by the time the state board rendered its decision in February of 1971, a new reached number was in effect and the Selective Service System was inducting only those I–A registrants of the First Group with lottery numbers below 125.

However, as previously stated, Crowley's draft board placed him in the Extended Group for 1971. Under pertinent Selective Service Regulations [1] the Extended Group was composed of I–A draft registrants with reached lottery numbers who had lost their deferments during 1970 and who were not called for induction by the end of that year. Members of the Extended Group, regardless of their lottery numbers, were subject to induction before members of the First Group.

The government contends on appeal, as it did before the district court, that Crowley was classified I–A on October 21, 1970, when his local draft board first made its determination. Under this theory Crowley met the requirements for the Extended Group since he was "in" Class I–A in 1970; his number was reached by the draft board; and he was

1. 32 C.F.R. 1631.7, et seq.

not called for induction in 1970. On the other hand, Crowley argues that he was not "in" Class I–A until February 16, 1971, when the state board affirmed the prior classification by the local board. If this assertion is true, Crowley did not qualify for the Extended Group (since he was never "in" Class I–A in 1970) and the order to report for induction was invalid. On the merits, then, the legality of Crowley's induction turns on the question of whether the decision of the State Appeal Board was a *de novo* determination or whether the decision relates back to 1970 to the time of classification by the local draft board.

We need not decide this question, however, since we hold that the district court was without jurisdiction of the merits by virtue of Section 10(b) (3) of the Military Service Act, supra. Under § 10(b) (3) judicial review of the "classification or processing of any registrant" is prohibited until "after the registrant has responded either affirmatively or negatively to an order to report for induction". Of course this statute does not foreclose pre-induction review of every act of classification by the Selective Service System. Compare Oestereich v. Selective Service Board, 1968, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402, and Breen v. Selective Service Board, 1970, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653, with Clark v. Gabriel, 1968, 393 U.S. 256, 89 S.Ct. 424, 21 L. Ed.2d 418, and Boyd v. Clark (S.D.N.Y. 1968) 287 F.Supp. 561, aff'd 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969). Nevertheless, in the more recent case of Fein v. Selective Service System, 1972, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 the Supreme Court once again confronted the issue of the availability of pre-induction review to a registrant who asserts an erroneous classification by his draft board. The court declined to review Fein's claim to conscientious objector status prior to induction even though Fein contended the I–O classification was denied by the use of procedures which violated the Due Process Clause of the Fifth Amendment.

Citing its previous decisions in *Oestereich, Gabriel, Boyd* and *Breen,* all supra, the court repeatedly stressed the fact that Fein was not asserting a classification to which he was *concededly* entitled:

"Thus *Oestereich, Gabriel, Breen,* and *Boyd* together establish the principles (a) that § 10(b) (3) does not foreclose pre-induction judicial review in that rather rare instance where administrative action, based on reasons unrelated to the merits of the claim to exemption or deferment, deprives the registrant of the classification to which, otherwise and *concededly,* he is entitled by statute, . . ." 405 U.S. at 374, 375, 92 S.Ct. at 1069.

"These principles do not automatically decide Fein's case. The doctor, unlike Oestereich and unlike Breen, cannot and does not claim a statutory exemption or a statutory deferment on the basis of objectively established and *conceded* status." 405 U.S. at 375, 92 S.Ct. at 1069.

"We further conclude that, as measured against the facts of Fein's case, it is *Gabriel,* and not *Oestereich* and *Breen,* that is controlling. Unlike the registrants in *Oestereich* and *Breen,* Fein's claimed status is not one that was factually *conceded* and thus was assured by the statute. . . ." 405 U.S. at 376, 92 S.Ct. at 1070.

"We are not persuaded, as has been suggested, that the local board's grant of the I–O classification equates with the *conceded exemption* and deferment involved in Oestereich and Breen. *Objective certainty* of status is lacking; . . ." 405 U.S. at 376, 92 S.Ct. at 1070.

(All emphasis supplied).

By emphasizing the lack of objective certainty of the asserted status the court reaffirmed its holding in Oestereich v. Selective Service Board, supra, where pre-induction review was allowed on the ground that the draft board's classification procedure was "basically lawless". 393 U.S. at 237, 89 S.Ct. at

414. See also Pasquier v. Tarr, 5 Cir. 1971, 444 F.2d 116, and Gregory v. Tarr, 6 Cir. 1971, 436 F.2d 513.

Turning to the case at hand, Crowley contends he was not classified I–A until the State Appeal Board acted on his appeal in 1971. We express no views on the merits of this claim, but we hold that it falls far short of being an asserted status to which the registrant is concededly entitled. Fein v. Selective Service System, supra.

Accordingly, the order of the district court enjoining Crowley's induction is reversed with directions to dissolve the injunction in accordance with the views expressed herein.

Reversed.

JOHN R. BROWN, Chief Judge (concurring specially):

My disagreement with the Court's holding stems from its interpretation of *Fein*,[1] as expressed in the opinion. In *Fein* the registrant had asserted that he was entitled to a conscientious objector classification, but that such status had been denied him by Selective Service procedures which allegedly violated due process of law. The Court held that § 10(b) (3) would preclude preinduction consideration of that claim because Fein's ultimate entitlement to conscientious objector status was not *"factually* conceded and thus assured by the statute upon objective criteria." 405 U.S. at 376, 92 S.Ct. at 1070, 31 L.Ed.2d at 307 (emphasis added). Fein's conscientious objector claim "turned 'on the weight and credibility of the testimony,' * * * [a]nd it was 'dependent upon an act of judgment by the board.'" *Id.* Accordingly, pre-induction review was barred,

since § 10(b) (3) forecloses review in the situation where "the board, authoritatively, has used its discretion and judgment in *determining facts* and in arriving at a classification for the registrant." *Id.* (Emphasis added).

By contrast, Crowley's claim that he is entitled to assignment to the First Priority Selection Group instead of the Extended Priority Selection Group does not involve any determination of facts, exercise of discretion or act of judgment. It would be a purely ministerial duty on the Board, if Crowley's interpretation of the regulations is correct. The *facts* are undisputed, as the Court concedes, and Crowley's claim turns solely on the legal consequences of those facts, as the Board asserts them to be. Unlike *Fein* where the ultimate issue (Fein's entitlement to conscientious objector status) required subjective, judgment-call considerations, the ultimate issue in Crowley's case (his entitlement to First Priority Selection Group assignment rather than Extended Priority Selection Group placement) involves solely a completely objective analysis of what the regulations prescribe—a "distilled question of law." Cf. Hunt v. Local Board No. 197, 3 Cir. (en banc), 1971, 438 F.2d 1128, 1138. Accordingly, *Fein* does not answer the problem of Crowley's case.

More importantly, I do not believe that the Court's interpretation of *Fein*, stressing as it does the term *"conceded* status," can be reconciled with the holdings in *Oestereich*[2] and *Breen*,[3] cases which the Supreme Court specifically reaffirmed in *Fein*.[4] In both *Oestereich* and *Breen* the Selective Service had strenuously urged that the registrants

1. Fein v. Selective Service Local Board No. 7, 1972, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298.

2. Oestereich v. Selective Service Board, 1968, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402.

3. Breen v. Selective Service Board, 1970, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653.

4. "We again conclude that the line drawn by the Court between Oestereich and Breen, on the one hand, and Gabriel and, inferentially, Boyd, on the other, is the appropriate place at which in the face of the bar of § 10(b) (3), to distinguish between availability and unavailability of pre-induction review. We therefore adhere to the principles established by those cases." 405 U.S. at 376, 92 S.Ct. at 1070, 31 L.Ed.2d at 307.

were entitled only to I–A status. Indeed, under the regulations as they then existed, that is the only legal status to which the were entitled. Of course, those regulations were declared invalid for their lack of statutory authorization, but the point is that far from "conceding" that Oestereich was entitled to IV–D status under the regulations, or Breen, that of a II–S, the Government vigorously argued that they were properly entitled to I–A status only. And that argument could not have been patently frivolous or absurd, since it was favorably received by the local boards, the appeals boards, the District Courts, the Courts of Appeals and several dissenting justices of the Supreme Court in each case. Oestereich and Breen were granted pre-induction review for reasons altogether removed from concessions of status (in the sense that term is employed by the Court here), for indeed the Selective Service did not concede their *legal* status at all. And that issue —*legal* status—is the only "unconceded" aspect of Crowley's case.

But all that is not to say that pre-induction review is appropriate here. On the contrary, I agree that judicial consideration of the merits of Crowley's claim is barred by § 10(b) (3). I, however, would reach this conclusion for the reason that Crowley's claim is *not grounded in the statute*, not because there is some dispute over his legal status, or because the Government has refused to "concede."

In the correct approach, I believe, it is first necessary to pierce the pleadings and preview the merits [5] in order to comprehend precisely the nature of the claim being made, which in this case relies exclusively on the *regulations* and not the statute. Crowley's contention is that the State Appeals Board *classified* him I–A on February 16, 1971. Under 32 C.F.R. §§ 1626.26(a) and 1625.11 [6] and the cases interpreting those regulations,[7] the Appeals Board's classification "shall be and have the effect of *a new and original classification even though the registrant is again placed in the class that he was in before*

---

5. Cf. Gregory v. Tarr, 6 Cir., 1971, 436 F.2d 513, 515–516; Stella v. Selective Service Board, 2 Cir., 1970, 427 F.2d 887, 889.

6. 32 C.F.R. § 1626.26(a) provides:
 "The appeal board shall classify the registrant, giving consideration to the various classes in the same manner in which the local board gives consideration thereto when it classifies a registrant."
 The here pertinent "manner" of classifying a registrant is set forth in § 1625.11, which provides:
 "When the local board reopens the registrant's classification, it shall consider the new information which it has received and shall again classify the registrant in the same manner as if he had never before been classified. Such classification shall be and have the effect of a new and original classification even though the registrant is again placed in the class that he was in before his classification was reopened."

7. See, e. g., United States v. Chodorski, 7 Cir., 1956, 240 F.2d 590, 591, cert. denied, 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 858, ("The decision of the local board * * * has been set aside and

held for naught * * *."); United States v. Stepler, 3 Cir., 1958, 258 F.2d 310 (A classification by an Appeal Board is not, therefore, merely an affirmance of the action of an inferior agency but is the independent act of such board.); United States v. Longworth, S.D.Ohio, 1967, 269 F.Supp. 971, 976 ("[An Appeal Board] classification is one of first instance, not a mere affirmance or reversal of the Local Board."). See also, De Remer v. United States, 8 Cir., 1965, 340 F.2d 712; Cramer v. France, 9 Cir., 1945, 148 F.2d 801; Reed v. United States, 9 Cir., 1953, 205 F.2d 216; United States ex rel. Bodenstein v. Nichols, 3 Cir., 1945, 151 F.2d 155; Tyrrell v. United States, 9 Cir., 1952, 200 F.2d 8, cert. denied, 345 U.S. 910, 73 S.Ct. 646, 97 L.Ed. 1346; Capehart v. United States, 4 Cir., 1956, 237 F.2d 388, cert. denied, 352 U.S. 971, 77 S.Ct. 363, 1 L.Ed.2d 324; Ayers v. United States, 9 Cir., 1956, 240 F.2d 802, cert. denied, 352 U.S. 1016, 77 S.Ct. 563, 1 L.Ed.2d 548; United States v. Dunn, D.Mass., 1967, 264 F.Supp. 112, aff'd, 1 Cir., 383 F.2d 357; Storey v. United States, 9 Cir., 1966, 370 F.2d 255; United States v. Lynch, S.D.Cal., 1953, 115 F.Supp. 735.

\* \* \*." 32 C.F.R. § 1625.11. (Emphasis added). Thus, Crowley argues, the legal effect of the Appeals Board's action in classifying him I–A was a new and independent classification, despite the fact that he was again placed in the same class (I–A) that he had been in before the appeal was decided.

The First Priority Selection Group is defined by 32 C.F.R. § 1631.7(c) (2) (ii) and includes all "nonvolunteers who prior to January 1 [1971] have attained the age of 19 but not 26 years and *who during 1971 are classified into Class I–A*." (Emphasis added.) During 1971 —on February 16, 1971, to be precise— Crowley was "classified into Class I–A" by the Appeals Board, in an action which had the force and effect under the regulations of an initial classification, despite the fact that Crowley was already "in" Class I–A by virtue of the local board's December 16, 1970, classification of him.[8]

Thus, Crowley argues, *under the regulations* he is entitled to be assigned to the First Priority Selection Group, since he was classified into Class I–A during 1971.[9]

The Government's answer to this theory—and ironically it is the same response evoked by the courts in allowing pre-induction review in limited situations despite the apparent absolute prohibition of § 10(b) (3)[10]—is simply that the regulations quoted cannot and therefore do not mean what their literal words say they mean. Specifically, the Government argues that, despite the absence of express qualifying language, the definition of the First Priority Selection Group contained in 32 C.F.R. § 1631.7(2) (ii) should be interpreted to mean to apply only to registrants who "during [1971] are classified into Class I–A" *from another class.* Support for this interpretation of the pertinent regulation is found in the transmittal letter

8. Although Crowley was initially reclassified into Class I–A by the local board on October 21, 1970, he was finally classified by the board on December 16, 1970, following his personal appearance before the board. The Government's brief, particularly at page 6, continually refers to this date (December 16, 1970) as the trigger date for Extended Priority Selection Group liability. In other words, it seems to be the Government's position that Crowley was "classified into I–A" when the local board *finally* classified him on December 16, 1970.

9. 32 C.F.R. § 1631.7(b) (2) defines the Extended Priority Selection Group to consist of "registrants who on December 31 were members of the First Priority Selection Group [i. e., generally, I–A's] whose random sequence number had been reached but who had not been issued Orders to Report for Induction." The consequences of such classification are set out in § 1631.7(d) (4) :

"Members of the First Priority Selection Group on December 31 in any calendar year whose random sequence number had been reached but who had not been issued Orders to Report for Induction during the calendar year shall be assigned to the Extended Priority Selection Group for the immediately succeeding calendar year."

To the extent, if any, that Crowley might also be eligible for inclusion in

the Extended Priority Selection Group by virtue of his having been classified "in" Class I–A on December 31, 1970, that fact *may* be of no consequence *if* Crowley is also entitled under the regulations to be assigned to the First Priority Selection Group. 32 C.F.R. § 1632.2 provides that "the registrant shall be classified in the lowest class for which he is determined to be eligible." Whether or not that regulation applies to "classification" into priority selection groups within classes need not—indeed cannot—be determined here, although it should be noted that in effect and Selective Service usage, if not definition, a determination of assignment to priority groups within classes is apparently deemed to be a "classification" itself. See, e. g., Local Board Memorandum No. 99: "It is important that local boards swiftly process all registrants who submit information which merits *reclassification* of the registrant into or out of the First Priority Selection Group." (Emphasis added.)

10. "No one, we believe, suggests that § 10(b) (3) can sustain a literal reading." *Oestereich, supra,* 393 U.S. at 238, 89 S.Ct. at 417, 21 L.Ed.2d at 406; *Fein, supra,* 405 U.S. at 373, 92 S.Ct. at 1062, 31 L.Ed.2d at 306; Edwards v. Selective Service Local Board No. 11, 5 Cir., 1970, 432 F.2d 287, 292.

from Selective Service Director Tarr to the White House accompanying the proposal which ultimately became § 1631.7. "The proposed language * * * (b) Extends all 'reached' I–A registrants *without regard to the type of delay* which prevented their 1970 induction." (Emphasis added.) Additionally, § 1631.7(d) (5) specifically provides, in effect, that Extended Priority Selection Group liability is not to be extinguished by the simple expedient of taking an appeal. Thus, the Selective Service argues that *under its interpretation of the regulations*, the registrant was properly assigned to the Extended Priority Selection Group instead of the First Priority Selection Group.

Regardless of whose interpretation of the regulations should ultimately prevail, it is apparent at this point that pre-induction consideration of the merits of the case must cease. The controversy boils down to a dispute over *interpretation of regulations*. Cast in that form, I can find no justification in the cases or the rationale underlying them to poke another hole in § 10(b) (3)'s anti-litigious dyke.

The few Supreme Court cases which have forged the limited exception to § 10(b) (3)'s otherwise impervious and absolute proscription have all involved cases in which the claimed exemption or deferment had been specifically mandated by Congress. It was required by the statute. The Selective Service's actions or regulations had, in those cases, worked *to deprive the registrant of the* classification to which Congress had *specifically* pronounced him *statutorily* entitled. Administrative action which subverts the policy of the agency's underlying statutory mandate is "basically

lawless",[11] and where the agency is the Selective Service System, pre-induction review of its determinations is required, despite § 10(b) (3), where the local board or the System has acted "outside the pale"[12] of the Selective Service Act, to the abrogation of rights or benefits bestowed by the statute.

But this is not such a case. Nothing in the Act even mentions, let alone defines entitlement to, First Priority Selection Groups or Extended Priority Selection Groups. Rather, these are classifications established by the regulations—not the statute—pursuant to the President's statutory authority to promulgate rules respecting the induction of those registrants not deferred or exempted by statute.

Indeed, the statute demands, and therefore pre-induction review might well be available to vindicate, that the Boards act in accordance with the regulations. But that is not really the argument here. Rather, the conflict here involves the interpretation of administrative regulations. Both sides proffer facially reasonable interpretations of the relevant regulations. Particularly given the presumption of administrative regularity,[13] the great deference accorded agency interpretations of the regulations which it has promulgated for itself[14] and the unambiguous Congressional policy to minimize judicial interference with Selective Service processing at the pre-induction stage, courts should not create exceptions to § 10(b) (3) except where such are absolutely necessary to vindicate rights expressly created by the *statute*. This to me is the lesson of *Fein*, which speaks repeatedly in terms of "entitled by *statute*," "assured by the *statute*" and "*statutory* exemption and

---

11. See, *Oestereich, supra*, 393 U.S. at 237, 89 S.Ct. at 416, 21 L.Ed.2d at 406.

12. See *Edwards, supra*, 432 F.2d at 292.

13. See, e. g., Greer v. United States, 5 Cir. 1967, 378 F.2d 931; Lowe v. United States, 5 Cir., 1968, 389 F.2d 51; Campbell v. United States, 5 Cir., 1968, 396 F.2d 1; Pigue v. United States, 5 Cir., 1968, 389 F.2d 765.

14. See, Udall v. Tallman, 1965, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616; Bowles v. Seminole Rock & Sand Co., 1945, 325 U.S. 410, 413–414, 65 S. Ct. 1215, 1217, 89 L.Ed. 1700, 1702; Allen M. Campbell Co. v. Lloyd Wood Construction Co., 5 Cir., 1971, 446 F.2d 261, 265.

*statutory* deferment." (Emphasis added). No such rights are jeopardized here.

Since the Board's interpretation of the lawfully promulgated regulations is not patently unreasonable, it cannot be said that assignment of this registrant to the First Priority Selection Group is demanded by the statute [15] or that assigning him to the Extended Priority Selection Group goes "outside the pale of the Act." Accordingly, § 10(b)(3) forecloses judicial consideration of the merits of the dispute.

---

[15]. Crowley's contention that his claim is grounded in the statutory provision authorizing the President to establish Appeals Boards can be easily dismissed. The provision evoked might well establish a registrants' right to appeal, but it falls short of mandating a statutory effect to be accorded the appeal when it results in a reaffirmation of the classification fixed by the local board, so long as the substantive right to appeal is not abrogated. Similarly, Crowley's claim that he was not "in" Class I–A on December 31, 1970, since he had taken an appeal, finds nothing in the *statute* to compel that interpretation of the regulations. The statute simply does not speak of deferment or exemption from Extended Priority Selection Groups.