**Oscar Dale PORTER, Plaintiff-Appellant,**

v.

**Elliot L. RICHARDSON, Attorney General of the United States, et al., Defendants-Appellees.**

**No. 71-2976.**

United States Court of Appeals, Ninth Circuit.

Aug. 23, 1973.

Larry J. Richmond (argued), Phoenix, Ariz., for plaintiff-appellant.

William D. Appler, Silver Spring, Md. (argued), L. Patrick Gray, III, Asst. Atty. Gen., Dept. of Justice, Washington, D.C., William C. Smitherman, U. S. Atty., Phoenix, Ariz., Morton Hollander, Dept. of Justice, Washington, D.C., for defendants-appellees.

Before MERRILL, ELY and WRIGHT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

The issue here is whether the district court was correct in holding that preinduction judicial review of a local Selec-

tive Service board's refusal to issue appellant a fatherhood deferment was prohibited by § 10(b)(3) of the Military Selective Service Act of 1967, 50 U.S.C. App. § 460(b)(3).[1] If the district court was correct, and § 10(b)(3) deprived it of jurisdiction at this time, then Porter must wait and challenge the board's action either by habeas corpus or by defense to criminal proceedings against him.

Porter was classified I-A by his local board on June 9, 1967. After becoming a full time student in the fall of 1967, Porter requested on January 26, 1968, that he be classified II-S, and on March 8, 1968 he received such classification from his local board. Then, on May 3, 1968, Porter notified his local board that his wife was pregnant[2] and requested a III-A fatherhood deferment. The local board denied Porter the fatherhood deferment on the ground that he was ineligible for such a classification having been classified II-S subsequent to June 30, 1967.[3]

Appellant's student deferment continued until April 1969, when he was reclassified I-A. He was ordered inducted on July 6, 1970, but he refused to report.

Prior to any criminal proceedings being brought against him, appellant brought this action for declaratory and injunctive relief. The government responded, and the district court so held, that the district court was without subject matter jurisdiction to entertain the action since preinduction judicial review of appellant's claim was barred by § 10(b)(3).

We are again confronted with the most difficult task of attempting to determine the extent to which an enactment of Congress, § 10(b)(3), deprives Article III courts of jurisdiction otherwise conferred upon them by 28 U.S.C. § 1331. Any consideration of the parameters of the withheld jurisdiction must acknowledge the congressional concern, expressed in § 10(b)(3), over preventing "litigious delay in the process of raising an army." Shea v. Mitchell, 137 U.S. App.D.C. 227, 421 F.2d 1162, 1165 (1970).

The Supreme Court has consistently recognized, however, that § 10(b)(3) does not strip Article III courts of jurisdiction of all preinduction suits. Oestereich v. Selective Service System, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); Breen v. Selective Service Local Board, 396 U.S. 460, 90 S.Ct. 661, 24 L. Ed.2d 653 (1970). In its most recent interpretation of § 10(b)(3), the Court declared:

Thus [previous cases interpreting § 10(b)(3)] together establish the principles (a) that § 10(b)(3) does not foreclose pre-induction judicial review in that rather rare instance where administrative action, based on reasons unrelated to the merits of the claim to exemption or deferment, deprives the registrant of the classification to which, otherwise and concededly, he is entitled by statute, and (b) that § 10(b)(3) does foreclose pre-induction judicial review in the more common situation where the board, authoritatively, has used its discretion and judgment in determining facts and in ar-

1. Section 10(b)(3) provides, in relevant part:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution . [for refusing to report] . . . after the registrant has responded either affirmatively or negatively to an order to report for induction . . . *Provided*, That such review shall go to the question of the jurisdiction herein reserved

to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant."

2. Porter's wife was delivered of a child on October 25, 1968. For the purposes of this opinion, we will assume that she was pregnant prior to Porter's receipt of a II–S classification on March 8, 1968.

3. 32 C.F.R. § 1622.30(a).

riving at a classification for the registrant. Fein v. Selective Service System, 405 U.S. 365, 374–375, 92 S.Ct. 1062, 1069, 31 L.Ed.2d 298 (1972).

■ We read *Fein* and its predecessors, as interpreting § 10(b)(3) as barring preinduction judicial review in all but those rare cases where the action of the Selective Service System deprives the registrant of a classification to which he is entitled *by statute.*[4] In only two cases has the Court found § 10(b)(3) not to bar preinduction review. In Oestereich v. Selective Service System, *supra,* the registrant had been classified IV-D in accordance with § 6(g) of the Selective Service Act when he turned in his registration certificate as a protest against the Vietnam war. Applying the regulations then in effect, the local board declared Oestereich delinquent and reclassified him I-A.

The Court held that § 10(b)(3) was no bar to preinduction review, relying upon the fact that Oestereich concededly was entitled to a *statutorily* mandated ministerial exemption if the delinquency regulations which were being used to deprive him of his exemption were invalid. As the Court stated: "when Congress has granted an exemption and a registrant meets its terms and conditions, a Board [cannot] nonetheless withhold it from him for activities or conduct not material to the grant or withdrawal of the exemption." *Oestereich, supra,* 393 U.S. at 237, 89 S.Ct. at 416.

Similarily, in Breen v. Selective Service Local Board, *supra,* the Court found § 10(b)(3) no bar to judicial review where the local board applied the delinquency regulation to deny the registrant a student deferment to which he otherwise was concededly entitled. In *Breen,* just as in *Oestereich,* "the order for induction involved a 'clear departure by

the Board from its *statutory* mandate,'". (Emphasis supplied.) *Breen, supra,* 396 U.S. at 467, 90 S.Ct. at 666.

Thus in Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968), the Court held that § 10(b)(3) barred preinduction judicial review. *Oestereich* was distinguished as involving a *statutory* entitlement to exemption, whereas in *Gabriel* there was "no doubt of the Board's statutory authority to take action which appellee challenges. . . ." *Id.* at 258, 89 S.Ct. at 426. *See also* Boyd v. Clark, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969).

■ We conclude that a board's classification action is not subject to preinduction review as long as the board is acting within the scope of its statutory authority. Our inquiry then, should be to "pierce the pleadings and preview the merits" in order to determine whether Porter's claim is grounded in the statute, or whether he is solely objecting to the board's interpretation of regulations which are not statutorily infirm. *See* Crowley v. Pierce, 461 F.2d 614, 618 (5th Cir. 1972) (Brown, concurring).

Porter's contention is that, at the moment his wife conceived their child, he was entitled to a III-A deferment under 32 C.F.R. § 1622.30(a):

> "In Class III-A shall be placed any registrant who has a child [defined as *in esse* from the date of conception] . . ."

Porter claims that his right to the III-A classification was indefeasible and survives his having been granted a II-S deferment, the following portion of § 1622.30(a) to the contrary:

> ". . . except that a registrant who is classified in Class II-S after [June 30, 1967] shall not be eligible."

---

4. *See* Crowley v. Pierce, 461 F.2d 614, 618 (5th Cir. 1972) (Brown, concurring); Morgan v. Melchar, 467 F.2d 133 (3d Cir. 1972); McCarthy v. Director of Selective Service System, 460 F.2d 1089 (7th Cir. 1972). Since we conclude that the Board's interpretation of the regulation is a reason-

able one, we are not called upon to decide the applicability of § 10(b)(3) to the situation where the Board engages in "blatantly lawless" conduct. *See,* e. g., Horey v. Tarr, 470 F.2d 775 (2d Cir. 1972). (Section 10(b)(3) no bar when Board departs from "specific and definite" regulation).

Porter does not claim that under the *statute* he was entitled to a III-A deferment at the date of his wife's conception, nor could he, for the III-A deferment has been established by regulation, under the following statutory authority:

" . . . the President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment . . . of any or all categories of persons who have children, or wives and children, with whom they maintain a bona fide family relationship in their homes." 50 U.S.C.App. § 456(h)(2).

Pursuant to this broad statutory directive, the President established the III-A classification, with the proviso that it is not available to anyone who has received a II-S deferment after June 30, 1967. Porter contends that the terms "shall be entitled" of the applicable regulation indicates that if his wife became pregnant prior to March 8, 1968, the date he received his II-S classification, then he was entitled to a III-A deferment, the intervening II-S classification notwithstanding.

Porter's local board interpreted the regulation differently. As they read it, once Porter was issued a II-S classification, he was no longer eligible for a III-A, no matter when his wife became pregnant.

Without passing on the merits of Porter's interpretation, it must be conceded that the board's interpretation is a reasonable reading of the regulation. Porter, however, would have us choose his interpretation, on the grounds that it would more closely approximate the Congressional purpose found in 50 U.S.C. App. § 456(h)(1):

"No person who has received a student deferment . . . shall thereafter be granted a [III-A] deferment. . . ."

It is accepted that the purpose of this statutory language was to preclude the "pyramiding" of deferments into complete exemption from military service. *See* Gregory v. Tarr, 436 F.2d 513 (6th Cir. 1971). Porter argues that since his wife was already pregnant at the time he received the II-S classification, and since he was, under the regulations, entitled to a III-A deferment at that time, no pyramiding of deferments was involved in his case, and we would be nearer to the Congressional purpose of § 456(h)(1) were we to interpret the regulation as he desires.

▮ We are faced, however, with the fact that Congress gave the President a broad statutory directive to establish regulations dealing with deferments for men with children. Pursuant to that discretionary authority, Reg. 1622.30(a) was adopted. Since we cannot say that the board's interpretation deprives Porter of an exemption or deferment to which he is "entitled by statute," and since the board's interpretation is reasonable, we must conclude that § 10(b)(3) applies. To hold otherwise would totally nullify the clearly expressed Congressional purpose to limit judicial interference with Selective Service preinduction processing. If we were to hold § 10(b)(3) to be no bar in this case, then any case where a board's interpretation of a regulation is disputed would also be outside the jurisdictional limitations of § 10(b)(3).

▮ This of course is not to say that every interpretation given a regulation by a board must necessarily escape preinduction judicial review. But where the board's interpretation, as here, is not blatantly lawless,[5] and where, as here, the registrant's entitlement to a deferment or exemption is not grounded in a statute, § 10(b)(3) does operate to strip the district court of jurisdiction over the merits of the controversy.

Affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent. The majority opinion unnecessarily casts our court

---

5. *See*, n. 4, *supra*.

into direct conflict with the Second Circuit, it does not harmonize with controlling authorities, and it may result in the imposition of an intolerable injustice upon a youth who, from everything shown by the record, is an exceptionally decent and moral individual.

When Porter first registered with the Selective Service system, he was a college student attending Brigham Young University. A faithful disciple of the Church of Jesus Christ of the Latter Day Saints, he subsequently performed extensive ministerial service in behalf of his Church. It was after the termination of that mission that the events leading to the present controversy began.

The writing of a proposed opinion in this case was originally assigned to me. I prepared an opinion, eventually rejected by my Brothers, although, as can be seen, some of my language has been written into the opinion of the present majority. I can now express my views no better than I did when I first set them forth. Accordingly, I express my dissent by quoting, *in toto*, the original opinion that I prepared. It reads:

Here, the issue is whether section 10(b)(3) of the Military Selective Service Act of 1967, 50 U.S.C.App. § 460(b)(3),[1] prohibits preinduction judicial review of a local Selective Service Board's refusal to issue the appellant a fatherhood deferment under 50 U.S.C. App. § 456(h)(2) and 32 C.F.R. § 1622.-30(a). If section 10(b)(3) deprived the District Court of jurisdiction at this time, then Porter must wait and challenge the board's action either by habeas corpus or by defense to criminal proceedings against him. *See* Breen v.

Selective Service Board, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970); Oestereich v. Selective Service Board, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); *cf.* Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Falbo v. United States, 320 U. S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944).

In the fall of 1967, Porter became a full-time student at Arizona State University. Since at that time he did not request a student deferment, Porter's local board classified him I-A on June 9, 1967. Subsequently his wife became pregnant arguably on January 25, 1968, but neither prospective parent was aware of the conception until late April, approximately three months later. Thereafter, on May 3rd, Porter applied for a III-A fatherhood deferment. On the preceding January 26th, however, Porter had applied for a II-S student deferment that he received in March. The local board rejected Porter's request for the fatherhood deferment, reasoning that his application for the II-S classification extinguished his right to be classified III-A.

A child was born to the Porters on October 25, 1968. Following his reclassification as I-A in April of 1969, Porter received induction orders on July 6, 1970. He refused to report.

Porter claims that his local board erroneously refused to classify him III-A. The Government responds that preinduction judicial review of this claim is barred by statute and that the District Court was thus without subject matter jurisdiction to entertain the action.

It is of course clear that Porter's complaint stated a claim "arising under

---

[1]. Section 10(b)(3) provides, in relevant part:
"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution [for refusing to report] . . . after the registrant has responded either affirmatively or negatively to an order to report for induction . . . *Provided*, that such review shall go to the question of jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant."

. . . the Laws of the United States . . ." and that jurisdiction under the Constitution is present. The critical question is whether Congress, through section 10(b)(3) effectively deprived the District Court of statutory jurisdiction otherwise conferred by 28 U.S.C. §§ 1331, 1361.

Impetus for the passage of section 10(b)(3) derived from Congressional concern over preventing "litigious delay in the process of raising an army." Shea v. Mitchell, 137 U.S.App.D.C. 227, 421 F.2d 1162, 1165 (1970); see Gregory v. Tarr, 436 F.2d 513, 515 (6th Cir. 1971). The Statute, however, was drafted so broadly that a literal interpretation would ostensibly strip jurisdiction from all preinduction suits. That interpretation has necessarily been brushed aside, since the Congressional power to withhold or withdraw jurisdiction from lower federal courts is subject to constitutional limitations. See Eastern States Petroleum Corp. v. Rogers, 108 U.S.App.D.C. 63, 280 F.2d 611, 614 (1960); Battaglia v. General Motors Corp., 169 F.2d 254, 257 (2d Cir. 1948). Consequently, although the Supreme Court upheld the overall constitutionality of the provision, Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968), the Court construed it as not purporting to compromise, for example, the constitutionally protected writ of habeas corpus. Oestereich, supra, 393 U.S. at 238, 89 S.Ct. 414. Moreover, the Court has sought to delineate the boundaries of jurisdiction withheld by section 10(b)(3). In Fein v. Local Board, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972), Breen, supra, and Oestereich, supra, the Court declared that section 10(b)(3) forecloses review in cases wherein the board has exercised its discretion and judgment in evaluating facts in order to determine a classification. On the other hand, preinduction review remains available where the board engages in "blatantly lawless" conduct and where the board does not exercise its discretion in evaluating evidence and in determining whether a claimed classification is warranted.

The Government suggests that the Court's most recent pronouncements in *Fein* control and that they required dismissal for want of jurisdiction. We disagree.

Registrant Fein claimed that the Board's denial of his C-O (conscientious objector) application violated fourteenth amendment guarantees of procedural due process. The Supreme Court decided, however, that section 10(b)(3) barred preinduction review of Fein's claim because entitlement to conscientious objector status was not "factually conceded and thus was assured by the statute upon objective criteria." 405 U.S. at 376, 92 S.Ct. at 1070. Therefore, the Court reasoned that Fein's claim turned essentially upon " 'the weight and credibility of the testimony,' . . . [a]nd [that] it was 'dependent upon an act of judgment by the board.' " *Id.* Concluding that this was a situation wherein "the board, authoritatively, has used its discretion and judgment in determining facts and in arriving at a classification. . . .", the Court held that section 10(b)(3) foreclosed preinduction review.

Unlike Fein's C-O application, Porter's request for a III-A classification did not call upon the local board to determine facts, or to exercise its discretion or judgment. The facts here are undisputed, and the validity of Porter's claim depended solely upon the legal consequences of those facts. In contrast to the subjective, judgmental, and discretionary determination made in *Fein*, Porter's claim required only an objective consideration of the regulations themselves. If the interpretation advanced by Porter is correct, then the board was without authority to deny the III-A request. The *Fein* decision, therefore, does not dispose of our present problem. See Crowley v. Pierce, 461 F.2d 614, 617 (5th Cir. 1972) (Brown, C. J., concurring specially); Levine v. Local Board, 458 F.2d 1281, 1286 n.19 (2d Cir. 1972).

We read the applicable regulations[2] as declaring that, at any time prior to the issuance of induction orders an expectant father is entitled to a III-A deferment so long as he notifies his board of that status and so long as he has not been classified II-S between June 30, 1967 (the effective date of the Act), and the date of conception.

Conception of the Porters' child occurred prior to the II-S classification of March 8, 1967. Porter remained eligible for III-A deferment before that date and, in fact, his right to that deferment vested at conception. The right might have been forfeited had he failed to notify his board of the pregnancy or birth prior to induction orders. Since, however, Porter communicated his changed status to the board on May 3, 1968, and induction orders were not issued until July of 1970, the right remained indefeasible.

To the extent that judicial glosses of the jurisdictional parameters of section 10(b)(3) appear indefinite, we think we should apply the provision in a manner that will most effectively harmonize two overriding, and often competing, national policies: first, to facilitate the individual's quest for the prompt and just adjudication of his rights; secondly, to assure the Government the efficient procurement and training of military personnel.

Our interpretation of the relevant statutes and regulations convinces us that Porter's claim is wholly valid. Moreover, we are convinced that in situations, such as this, in which a local board has clearly departed from explicit, objective regulations, the national defense policy is best served by prompt judicial insistence upon uniform and accurate application of selective service regulations. Our conclusion would necessarily have been otherwise had the issues here been intertwined with factual or other subjective determinations properly vested in the board. Our disposition of this appeal, however, poses no conflict between individual and governmental interests.

We hold that Porter's indefeasible right to a fatherhood deferment arose prior to his classification as II-S and that, therefore, the board was without statutory authority to withhold a III-A deferment or to order his induction. The determination to withhold the fatherhood deferment thus involved "no exercise of discretion". Under *Fein, Breen,* and *Oestereich,* the dismissal of Porter's complaint was erroneous.

The foregoing constitutes, in full, my original opinion. I think it advisable to add brief comments concerning three authorities cited by the majority and which it supposes to support its conclusion.

I vigorously reject the majority's suggestion that the opinions of our sister Circuits in Crowley v. Pierce, 461 F.2d 614 (5th Cir. 1972); Morgan v. Melchar, 467 F.2d 133 (3d Cir. 1972); or McCarthy v. Director, 460 F.2d 1089 (7th Cir. 1972) undercut my reasoning in any significant way.

In *Crowley,* the distinction between a status conferred by statute and one conferred by a regulation pursuant to a statute was supposed only by one judge in a specially concurring opinion. Regardless of the Government's peccant statement that such a distinction was "squarely held", a fair reading of the majority and concurring opinions reveals that two members of the panel re-

2. 32 C.F.R. §§ 1622.30(a) and (c)(3) provide, in relevant part:

"In Class III-A shall be placed any registrant who has a child [defined *in esse* from the date of conception] . . . except that a registrant who is classified in Class II-S after [June 30, 1967] . . . shall not be eligible . . . .

. . . . .

"No registrant shall be placed in Class III-A . . . because he has a child which is not yet born unless prior to the time the board mails him an order to report for induction which is not subsequently cancelled there is filed with the local board the certificate of a licensed physician . . . ."

jected such an approach. The majority in *Crowley* in fact held that since Crowley did not assert a status to which he was concededly entitled, section 10(b)(3) barred jurisdiction. This is fully consistent with my approach, which demonstrates that the pertinent regulation clearly entitled Porter to a fatherhood deferment.

Our case is similarly quite different from Morgan v. Melchar. There, the registrant alleged that unconstitutional administrative procedures had deprived him of a hardship deferment. The draft board in *Morgan* exercised its discretion and judgment in resolving factual issues; its decision was a product of the "process" and the "system of classification". In contrast to the fatherhood deferment sought by Porter, which would be predicated upon purely objective criteria, the hardship deferment sought by Morgan is a malleable classification whose basis lies in the subjective judgment and discretion of the local board.

*McCarthy* also presented a somewhat different question. There, the registrant challenged the constitutionality of the regulation itself and the administrative procedures under which he was classified. Porter, in contrast, argues only that the board clearly departed from its own constitutional regulations. Moreover, as in *Morgan* and *Crowley*, and unlike Porter, the registrant in *McCarthy* did not assert a factually conceded status.

To the extent that *Crowley*, *Morgan* or *McCarthy* could be read as lending some support for the majority's approach, I would underscore once again the sound position of the Second Circuit, *e.g.*, Horey v. Tarr, 470 F.2d 775 (2d Cir. 1972); Martire v. Local Board, 467 F.2d 893 (2d Cir. 1972); Levine v. Local Board, 458 F.2d 1281 (2d Cir. 1972), as well as the reasoning in my original opinion set forth above.

The essential justification for circumscribing preinduction review was to insulate the selective service system from crippling judicial challenges. Congress

obviously wished to encourage local boards to exercise their administrative expertise in classifying registrants. When, as here, the issues are not "intertwined with factual or other subjective determinations properly vested in the board", and when "a local board has clearly departed from explicit, objective regulations, the national defense policy is best served by prompt judicial insistence upon uniform and accurate application of selective service regulations."

I would reverse.